## BUSTER v. CHICAGO, M., ST. P. & P. R. CO.

### No. 10478.

United States Court of Appeals, Seventh Circuit.

March 19, 1952.

James D. Moran, Ralph O. Winkenwerder, Raymond G. Lanctot, Chicago, Ill., for appellant.

Carson L. Taylor, William L. Hunter and Edwin O. Schiewe, Chicago, Ill., for appellee.

Before KERNER, FINNEGAN and SWAIM, Circuit Judges.

FINNEGAN, Circuit Judge.

This action was commenced in the Circuit Court of Cook County, Illinois, by John J. Buster, appellant herein, against the corporate defendant, Chicago, Milwaukee, St. Paul and Pacific Railroad Company, appellee, to recover damages in the sum of $5,000 arising out of his alleged wrongful discharge from his employment as a switch-

tender by the defendant-company. The agreement alleged to have been breached by plaintiff's discharge was between the Brotherhood of Railroad Trainmen, bargaining representative for plaintiff's union, and a General Manager's Committee of Railroads, including defendant's corporate predecessor, under the Railway Labor Act, 45 U.S.C.A. § 151 et seq. Because of diversity of citizenship the case, on petition of the defendant, was transferred to the United States District Court for the Northern District of Illinois, Eastern Division.

The transcript of removal was filed in the District Court on September 16, 1948. Thereafter, and on September 20, 1948, the corporate defendant filed its answer to the original complaint.

On April 3, 1950, plaintiff filed his supplemental complaint in which he represented that since the filing of his original complaint and up to April 3, 1950, he was ready, able and willing to return to the service of defendant as a switchman, but that defendant wrongfully declined to permit him to do so. That defendant, therefore, became liable to pay plaintiff the amount which his seniority rights would have entitled him to earn from August 2, 1948, the date of filing of the original complaint, up to April 3, 1950, the date of filing supplemental complaint, and from said latter date until he is reinstated and paid for all time lost. He alleges that defendant refuses to pay said sums and prays judgment against it for an additional Ten Thousand ($10,000) Dollars.

On April 17, 1950, the defendant filed its answer to the supplemental complaint.

The case came on for trial on March 15, 1951. As a result of pre-trial conferences and because of rulings on arguments, supported by briefs, made before that date, the trial court submitted to the jury then chosen only this single question:

Was the dismissal of the plaintiff, John J. Buster, by the defendant, Chicago, Milwaukee, St. Paul and Pacific Railroad Company on September 17, 1947, just?

In its verdict returned on March 19, 1951, the jury answered the single question submitted to it in the negative. Thereupon the court entered judgment in favor of the plaintiff and against the defendant-company for $13,106.28, being the amount earned by the person next in seniority to plaintiff from September 17, 1947, through March 15, 1951.

Thereafter, the matter came on for hearing on the following motions of the defendant:

1st—For a directed verdict at the conclusion of all the evidence, which was taken under advisement by the court;

2nd—For an order setting aside the jury's verdict and judgment entered thereon and for a judgment notwithstanding the verdict; and

3rd—For a new trial.

The trial court allowed defendant's motion for judgment notwithstanding the verdict, ordered the verdict set aside, and entered judgment for the defendant. This appeal followed.

█ ▪ In Broady v. Illinois Central R. R. Co., 7 Cir., 191 F.2d 73, certiorari denied, 342 U.S. 897, 72 S.Ct. 231, we held, on authority of Slocum v. Delaware, L. & W. R. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795; Order of Railway Conductors of America v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318; and Order of Railway Conductors of America v. Southern Ry. Co., 339 U.S. 255, 70 S.Ct. 585, 94 L.Ed. 811, that the district courts of the United States have no jurisdiction in an action to restore a discharged railway employee to his position, or to award him back wages because of his alleged wrongful discharge.

As a consequence the judgment of March 19, 1951, in so far as it was based on the supplemental complaint filed by plaintiff in the District Court, was a nullity and therefore properly set aside.

█ In the case at bar, however, the District Court, because of diversity of citizenship, had jurisdiction to hear and determine the cause of action relied on in the original complaint. That, as we have pointed out, was an action to recover damages for alleged wrongful discharge. Con-

formably to the provisions of the Railway Labor Act, the contract between the defendant-railroad company and the plaintiff's bargaining representative, provides: "(d) Yardmen or switchtenders taken out of the service or censured for cause shall be notified by the Company of the reason therefor, and shall be given a hearing within five days after being taken out of service, if demanded, and if held longer shall be paid for all time so held at their regular rates of pay. Yardmen or switchtenders shall have the right to be present, and to have an employee of their choice, at hearings and investigations to hear all oral and to read all written testimony, and to bring out any facts in connection with the case. They shall also have the right to bring such witnesses as they may desire to give testimony and may appeal to a higher officer of the Company in case the decision is unsatisfactory. Such decision shall be made known in writing within three days after the hearing, or yardman or switchtender will be paid for all time lost after expiration of the three days."

The Railway Labor Act, 45 U.S.C.A. § 153 provides: "(i) The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes."

The sole question involved on this appeal is whether or not the plaintiff was given a fair and impartial hearing on the charge that he had violated company rules. The trial court found that he was. In his opinion, unreported elsewhere, the trial judge said:

"The Court is of the opinion that the verdict rendered is contrary to the overwhelming preponderance of the evidence in the case. It is, therefore, necessary to set forth the essential facts of the controversy as revealed by the evidence adduced at the trial. In the afternoon of September 11, 1947, plaintiff and another employee, one Harry Paygman, engaged in a fight on the defendant's premises, as a result of which Paygman was taken to a hospital for medical treatment, including two sutures in his upper lip. He missed one day's work; plaintiff was not injured in any noticeable degree. Paygman is a small man, has only one hand, and, at the time of the altercation was 62 years of age, some 23 years older than the plaintiff. As a consequence of the fight, both participants were summoned to appear at a hearing conducted by officials of the defendant, i. e., E. G. Kiesele, Superintendent of the Chicago Terminal, and H. E. Sittler, Trainmaster. Plaintiff and Paygman were individually represented at the hearing by chairman of the Local Grievance Committee of the Brotherhood of Railroad Trainmen. On September 17, 1947, plaintiff was notified of his dismissal by Superintendent Kiesele. Plaintiff was discharged for violation of Rule 702 of the rules established by defendant for the conduct and discipline of its employees. That rule provides:

" 'Civil, gentlemanly deportment is required of all employees in their dealings with the public, their subordinates, and each other. Courtesy and attention to patrons is demanded.

" 'Employees are prohibited from entering into an altercation with any person regardless of provocation. They will make a note of the facts, if necessary, and report to their immediate superior.

" 'Employees must refrain from loud talking or the use of profane or vulgar language at stations or on or about trains.

" 'Playing practical jokes, scuffling or wrestling while on duty is prohibited.

" 'Employees who are insubordinate, dishonest, immoral, quarrelsome or otherwise vicious, or who do not conduct themselves in such a manner and handle their personal obligations in such a way that their railroad will not be subjected to criticism and

loss of good will, shall not be retained in the service.'

"Certainly, on its face, the rule is a reasonable one for the proper and efficient operation of the defendant railroad. The only question to be considered, therefore, is whether or not the rule was properly administered by the defendant, through its agents, in the instant case. A careful comparison of the transcript of the company hearing and the evidence adduced in the court trial reveals them to be essentially and substantively identical. In other words, qualitatively the plaintiff offered little or nothing more here to sustain his position than he had during the previous private hearing. In view of such fact, it appears clear that the jury substituted its judgment for that of the company officials rather than devoting itself, as instructed by the Court, entirely to a consideration of whether the defendant granted plaintiff a fair hearing and, in fairness and justice, could have arrived at the result actually attained, namely, dismissal of plaintiff on the ground that he was guilty of a violation of Rule 702."

Our examination of the record further discloses that after plaintiff was discharged he requested his Local Lodge of the Brotherhood of Railroad Trainmen to petition for his reinstatement. The chairman of the Local Grievance Committee, who also appeared on behalf of plaintiff at the company hearing, testified that an appeal from the superintendent's decision was processed in accordance with the usual union procedure and was handled by the General Chairman of the Grievance Committee of the Brotherhood of Railroad Trainmen with the general manager of defendant-company. Reinstatement of the plaintiff was denied. Thereafter, the files in the case were sent to headquarters of the Brotherhood of Railroad Trainmen, in Cleveland, Ohio, together with the request that they submit the controversy to the National Railroad Adjustment Board. The general officers of the Brotherhood of Railroad Trainmen refused, however, to submit the controversy to the National Railroad Adjustment Board.

We agree with the trial court that there is no substantial evidence in this record which would justify a finding that plaintiff did not have a fair and impartial hearing in September, 1947, on the charge that he had violated company rules.

It should, moreover be noted that on the undisputed evidence in this record the plaintiff suffered no loss whatsoever from a financial standpoint by reason of his discharge. He actually received in wages from other employers, from the time of discharge to the date of hearing, the sum of $12,987.31. He also received $650 from the Railroad Retirement Board.

Under the judgment, as originally entered by the court, he was awarded $13,106.28, out of which $650 was to be repaid to the Railroad Retirement Board. That would net plaintiff the sum of $12,456.28.

The law in Illinois is that the measure of damages for a breach of an employment contract is the difference between what the employee would have earned if continued in his employment, and the amount he has actually earned up to the time of trial from other sources. Doherty v. Schipper & Block, 250 Ill. 128, 133, 95 N.E. 74, 34 L.R.A.,N.S., 557, case note, 8 A.L.R. 338-342. On this record plaintiff could recover only nominal damages.

We are convinced, however, that the trial court properly dismissed the plaintiff's action. Although we do not approve of the course which that court followed in arriving at its conclusion, it did reach the right conclusion. That is the material thing. American Eagle Fire Insurance Co. v. Gayle, 6 Cir., 108 F.2d 116; Von Platen v. Winterbotham, 203 Ill. 198, 202, 67 N.E. 843.

The plaintiff has failed to establish that his discharge was wrongful. The judgment of the District Court is therefore affirmed.