In the Matter of Complaint and Suit of Samuel CUNNINGHAM, Plaintiff-Appellant,

v.

ERIE RAILROAD COMPANY and United Railroad Workers of America, Inc., C. I. O., Local 1463, Defendants-Appellees.

Nos. 22, October Term, 1957, 169, October Term, 1958, Docket 24189.

United States Court of Appeals Second Circuit.

Argued Oct. 17, 18, 1957.

Reargued Feb. 3, 1959.

Decided May 4, 1959.

Jerome T. Orans and Louis Lauer, New York City, for plaintiff-appellant.

J. Roger Carroll, New York City (Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, on the brief), for defendant-appellee Erie R. Co.

John F. O'Donnell, New York City (O'Donnell & Schwartz, Asher W. Schwartz and Michael Klein, New York City, on the brief), for defendant-appellee Union.

Before MEDINA, HINCKS and WATERMAN, Circuit Judges.

MEDINA, Circuit Judge.

Appellant Samuel Cunningham was for many years a ferryboat porter employed by appellee Erie Railroad Company and a member of appellee The United Railroad Workers of America, Inc., C. I. O., Local 1463. In the latter part of December, 1954 and in January and February, 1955 certain events occurred and thereafter Cunningham found himself no longer a member of the union and out of employment by the railroad. Acting *pro se* he brought this action against the union and the railroad in the District Court for the Southern District of New York, and, while his complaint speaks in general terms of his "constitutional rights," including the right to "life, liberty and the pursuit of happiness," it clearly appears that he claims: (1) that he was improperly deprived of his seniority rights; (2) that at first and for a time he refused to pay his union dues "until some action was taken regarding my seniority rights"; (3) that he later tendered payment of the arrears but the union refused to accept the tender; (4) that at the time of his exclusion from the union and his dismissal from employment by the railroad there were other employees of the railroad "who have been as much as 4 months in arrears of their union dues without being dismissed from their employment"; and (5) that the action taken by the union and by the railroad was "because I demanded action concerning my seniority." We interpret this somewhat discursive document, drawn by a person of obviously limited education, as charging in substance that he was wrongfully deprived of his seniority rights and that because he had the temerity to stand up for his rights and refused for a time to pay his union dues he was deprived of his union membership and discharged from the employment of the railroad for a reason other than the non-payment of union dues. The gist of his claim is that he was discriminated against by the union, and that this discrimination was based: (1) upon intemperate remarks, intransigence or generally allegedly wrongful conduct connected with his assertion that he had been deprived of his seniority rights; and (2) the permitting of other members of the union to remain in arrears of dues for longer periods without attempting to exclude them from membership in the union for non-payment of dues.

Such discrimination is asserted to be in violation of the provisions of the Railway Labor Act[1] in that the discharge

1. Applicable Statutory Provisions
   1. Section 2, Fourth, 45 U.S.C.A. § 152, Fourth
   "Fourth. * * * The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this Act. No carrier * * * shall * * * influence or coerce employees in an effort to induce them to join or remain * * * members of any labor organization * * *"

2. Section 2, Fifth, 45 U.S.C.A. § 152 Fifth
   "Fifth. No carrier, its officers, or agents shall require any person seeking employment to sign any contract or agreement promising to join or not to join a labor organization; and if any such contract has been enforced prior to the effective date of this Act, then such carrier shall notify the employees by an appropriate order that such contract has been discarded and is no longer binding on them in any way."

was for reasons "other than the failure of the employee to tender the periodic dues * * * uniformly required as a condition of acquiring or retaining membership." Cunningham contends that his discharge was in violation of the union's duty as the statutorily authorized bargaining representative to act fairly in his behalf, that it was not for the reasons specified in the Act, and that the payment of dues was not uniformly required.

The collective bargaining agreement itself is clearly in harmony with the Railway Labor Act.[2] Cunningham contends, however, that the union and the railroad have applied the agreement in his case in such fashion as to violate the intent of the statute.

Cunningham's complaint was dismissed after a non-jury trial and he appealed to this Court. On the first argument, at which appellant continued to represent himself, it was clear to us that the case involved serious questions of jurisdiction, about which appellant knew nothing, and we assigned counsel and set the case down for reargument.

It is not surprising that the trial judge failed to perceive the legal thrust of Cunningham's claim. In any event, the opinion reviews part of the evidence: finds that Cunningham's seniority rights were not infringed; that he did not pay his dues for October, November and December, 1954; that he was advised by the railroad of the union's complaint for non-payment of dues and admitted such non-payment; that a notice of December 24, 1954, pursuant to the terms of Section 1 of the union shop agreement between the railroad and the union, was served on Cunningham, who failed to request a hearing within ten days as required by the terms of the notice and that he was accordingly dismissed from his employment on February 16, 1955, effective as of January 6, 1955. Nothing is said in the opinion on the subject of whether there can be a lawful termination of membership in the union for non-payment of dues after a tender of the arrears. There is no finding of fact that the union did or did not terminate Cunningham's union membership because of his failure to pay dues, or because he raised what the union considered to be an offensive rumpus over his seniority rights; nor is there any finding of fact that the union did or did not discriminate against Cunningham by permitting other union members with greater arrearages to remain on the rolls, or that it did or did not entertain any hostility to him. Nor does the opinion below contain any conclusions of law to resolve the series of legal issues

---

3. Section 2, Eleventh (a), 45 U.S.C.A. § 152, Eleventh (a)

"Eleventh. * * * any carrier * * * and a labor organization * * * shall be permitted—

"(a) to make agreements, requiring, as a condition of continued employment, that within sixty days following the beginning of such employment, or the effective date of such agreements, whichever is the later, all employees shall become members of the labor organization representing their craft or class: Provided, That no such agreement shall require such condition of employment with respect to employees to whom membership is not available upon the same terms and conditions as are generally applicable to any other member or with respect to employees to whom membership was denied or terminated for any reason other than the failure of the employee to tender the periodic dues, initiation fees, and assessments (not including fines and penalties) uniformly required as a condition of acquiring or retaining membership."

2. Section 6. The dues of the Union shall be Two (2) Dollars per member per month payable on the first day of each month. Members failing to pay dues on the first day of each month shall be delinquent in dues. Any member failing to pay his dues on or before the 30th day of the month for which the dues are payable, or who fails to pay assessments on or before the 30th day of the month in which assessments are due shall be automatically suspended from membership in the Union.

(A) Individual members of the Union who have not worked five (5) days in any calendar month through no fault of their own shall be exonerated from the payment of dues for that month.

above outlined. The reason for all this apparently is that Cunningham's references in his complaint and in his testimony gave the trial court the impression that, as Cunningham asserted jurisdiction in the District Court under 28 U.S.C. § 1331, the basis of jurisdiction, in the conceded absence of any diversity of citizenship, was an alleged violation of some right arising out of the Constitution, which the trial judge construed as a claim that Section 2, Eleventh of the Railway Labor Act, as amended, 64 Stat. 1238, 45 U.S.C.A. § 152, was unconstitutional. Accordingly, as the Supreme Court decision, sustaining the validity of that legislation, in Railway Employes' Dept. v. Hanson, 1956, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112, was handed down just two days prior to the filing of the opinion of the trial judge herein, it was held that Cunningham's case, which was described as based upon "a wrongful discharge by the defendant railroad," should be dismissed.

### The Jurisdiction of the District Court

█ *In limine* we face the question of jurisdiction. It is a fair inference that Cunnigham bases his claim upon an alleged discriminatory discharge in violation of a right arising out of the Railway Labor Act, 45 U.S.C. § 151 et seq. See Steele v. Louisville & Nashville R. R., 1944, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; Brotherhood of Railroad Trainmen v. Howard, 1952, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283; Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80. He asserts this claim against both the railroad and the union. Whether he is right or wrong, there is jurisdiction, 28 U.S.C. §§ 1331, 1337, even without diversity. Cunningham is not asserting a state cause of action for wrongful discharge. See Buster v. Chicago, M., St. P. & P. R. R., 7 Cir., 1952, 195 F.2d 73; Stack v. New York Central R. R., 2 Cir., 1958, 258 F.2d 739; McDermott v. New York Central R. R., S.D.N.Y., 1940, 32 F.Supp. 873.

The next question, sometimes also loosely referred to as one of jurisdiction, is whether the District Court is competent to adjudicate the matter in view of the statutory prohibition contained in 45 U.S.C.A. § 153, creating the National Railroad Adjustment Board. Subsection 1(i) provides:

"The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions * * * shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes."

The argument of the railroad is that the Adjustment Board alone is competent to decide questions such as the dispute between the parties here, citing Slocum v. Delaware, L. & W. R. Co., 1950, 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795; Order of Railway Conductors v. Pitney, 1946, 326 U.S. 561, 66 S.Ct. 322, 90 L. Ed. 318; Johns v. Baltimore & O. R. R., N.D.Ill., 1954, 118 F.Supp. 317, affirmed per curiam, 347 U.S. 964, 74 S. Ct. 776, 98 L.Ed. 1107; and Hayes v. Union Pacific R. R., 9 Cir., 1950, 184 F.2d 337, certiorari denied 340 U.S. 942, 71 S.Ct. 506, 95 L.Ed. 680, which incidentally was stated by the Supreme Court in Conley v. Gibson, 1957, 355 U.S. 41, 44, note 4, 78 S.Ct. 99, 2 L.Ed. 2d 80 to have been "decided incorrectly."

This is a question of statutory interpretation. It may well be that the Adjustment Board is especially fitted to handle such disputes, but the opening sentence of Subsection 1(i) limits the competence of the Adjustment Board to the determination of: "disputes between an employee or group of employees and

a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules or working conditions." This dispute based on alleged discrimination is between the employee and the union not between either an employee or a union and the railroad; the railroad is brought in only because it claimed it was required by law to discharge persons who had been removed as members of the union for non-payment of dues.

■ But there is much more to this point and it all works against the Adjustment Board and in favor of the District Court. Despite admittedly strong policy considerations supporting the administrative channeling of railway labor disputes, it is well settled that there are certain exceptions or limitations which have evolved in the course of the development of decisional law in this very interesting phase of labor law. The state cause of action for wrongful discharge, as contrasted to other disputes arising out of collective bargaining agreements, is not precluded and may be brought either in a state court, or in a federal court if there is diversity. Moore v. Illinois Central R. R., 1941, 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089; Buster v. Chicago, M., St. P. & P. R. R., supra, 7 Cir., 1952, 195 F.2d 73; Donahoo v. Thompson, Mo.1956, 291 S. W.2d 70, certiorari denied 352 U.S. 941, 77 S.Ct. 261, 1 L.Ed.2d 237; Sjaastad v. Great Northern Railway Co., D. C.N.D., 1957, 155 F.Supp. 307. Of course, state law itself may also require the exhaustion of administrative remedies. See Transcontinental & Western Air, Inc. v. Koppal, 1953, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325.

A long line of Supreme Court cases, such as Steele, Howard and Conley, above cited, and including also Tunstall v. Brotherhood of Locomotive Firemen & Enginemen, 1944, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187; and Graham v. Brotherhood of Locomotive Firemen, 1949, 338 U.S. 232, 70 S.Ct. 14, 94 L. Ed. 22, all construe the Railway Labor Act as requiring union representation to be exercised without "hostile discrimination" toward any one group. In none of these cases did the court give its approval to arguments such as are raised here, to the effect that the Adjustment Board alone was competent to adjudicate the claim. On the contrary, it was held that discrimination was not within the ambit of the power of the Adjustment Board. These were all cases where the hostility of the unions to Negroes was apparently of an aggravated character.

■ When the scope of this exception to exclusive administrative competence was sought to be extended to cases other than those involving discrimination based upon race or color, the Fourth Circuit resisted in Alabaugh v. Baltimore & O. R. R., 1955, 222 F.2d 861. Cf. Colbert v. Brotherhood of Railroad Trainmen, 9 Cir., 1953, 206 F.2d 9. But the language used by the Supreme Court is not nearly so restrictive. See Conley, 355 U.S. at page 46, 78 S.Ct. at page 102; Steele, 323 U.S. at pages 199–204, 65 S.Ct. at pages 230–232. And several courts have reached a directly opposite conclusion. Mount v. Grand International Brotherhood of Locomotive Engineers, 6 Cir., 1955, 226 F.2d 604, certiorari denied 1956, 350 U.S. 967, 76 S.Ct. 436, 100 L.Ed. 839; Cherico v. Brotherhood of R. R. Trainmen, D.C.S.D.N.Y.1958, 167 F.Supp. 635; Choate v. Grand International Brotherhood of Locomotive Engineers, Tex.1958, 314 S.W.2d 795. Under analogous provisions of the National Labor Relations Act the Supreme Court went right to the merits of an arbitrary treatment case without discussing the exclusivity of the NLRB's jurisdiction. Ford Motor Co. v. Huffman, 1952, 345 U.S. 330, 73 S.Ct. 681, 97 L. Ed. 1048. See also N. L. R. B. v. Biscuit & Cracker Workers, 2 Cir., 1955, 222 F.2d 573; cf. Radio Officers' Union v. N. L. R. B., 1954, 347 U.S. 17, 74 S. Ct. 323, 98 L.Ed. 455. Accordingly, with all due respect for our brothers of the Fourth Circuit, we disagree with the reasoning of Alabaugh and will not follow it.

As a matter of common sense it does not seem rational to restrict "hostile discrimination" to any one particular group of cases. Moreover, Cunningham is also claiming violations of the specific requirements of the Railway Labor Act: (1) dismissal only for non-payment of dues, and (2) dues uniformly required.

The allegations and the proof demonstrate that what Cunningham is doing in this action is questioning the *validity* of the collective bargaining agreement as applied to the circumstances of his dismissal, rather than the *"interpretation or application"* of the agreement. Hence, Alabaugh to the contrary notwithstanding, we conclude that the Adjustment Board had no statutory authority to decide the dispute, and that the District Court was competent to proceed against the union, against which Cunningham leveled the charge of discrimination, in violation of the express or implied duty under the terms of the collective bargaining agreement to represent him fairly and impartially.

If the District Court has jurisdiction to proceed against the union it is clear, we think, that it has also power to adjudicate the claim against the railroad. It would be absurd to require this closely integrated dispute to be cut up into segments. While the complaint prays for relief by way of damages and does not in terms ask for Cunningham's reinstatement by the railroad, his claim was treated at the trial as one in the alternative for reinstatement and there was considerable discussion of the point on the oral argument before us, without objection. Moreover, the railroad has asserted in its amended answer a claim for indemnity against the union in the event that the railroad is held liable to Cunningham, on the theory that, if the action of the union in removing Cunningham from the union membership was wrongful, the union should bear the loss. But see Richardson v. Texas & N. O. R. R., 5 Cir., 1957, 242 F.2d 230.

The railroad was included as a party, wtihout discussion, in Steele, Howard and Graham. In Conley, 355 U.S. at page 45, 78 S.Ct. at page 101 the presence of the railroad was deemed not to be indispensable, but is was recognized that the railroad might be brought in later. See also Richardson v. Texas & N. O. R. R., supra.

In any event it is perfectly clear that Cunningham claims to have some substantive right, arising out of the Railway Labor Act, against both the union and the railroad. Whether he is right or wrong about this, we hold that the District Court has federal-question jurisdiction over both the union and the railroad.

## The Merits

It may well be that this is just another case of an habitual delinquent who was separated from membership in the union in the normal course of events. The record shows that twice before within the year preceding his discharge Cunningham was in arrears but was allowed to pay his back dues. In February of 1954 he was given a warning notice similar to one sent to him on December 24, 1954, informing him of his delinquency and apprising him of his right to a hearing. Since it was common trade knowledge that the scope of this hearing was broad and that union policy was liberal, it may be that Cunningham's failure to pursue his union remedy prejudiced his standing as a member. Such questions can properly be handled on the remand.

But in order to clarify the issues to be tried on the remand we make the following observations:

■ (1) Cunningham contends that his tender of arrears of dues prior to February 16, 1955, when he was officially informed by the railroad that, effective January 6, 1955, his "service terminated account not complying with Union Shop Agreement," was a sufficient compliance with the union shop agreement consummated under the authority of the Railway Labor Act. His argument is that the discharge was improper because not effectuated for "failure of the employee to tender periodic dues,"

but rather for "failure of the employee to tender periodic dues *on time*." See 43 Va.L.Rev. 1319, 1321 (1957). We have already rejected this contention under similar provisions of the National Labor Relations Act, Sections 8(a) (1, 3), 8(b) (1, 2), 29 U.S.C.A. § 158(a) (1, 3) (b) (1, 2). International Ass'n of Mach. v. N. L. R. B., 2 Cir., 1957, 247 F.2d 414, N. L. R. B. v. Technicolor, 9 Cir., 1957, 248 F.2d 348. The necessity for an effective union sanction to discourage "free-riders" and the prejudice to the orderly administration of internal union affairs of any other rule underlay these decisions. See 9 Syr.L.Rev. 348 (1958). Such policies are equally applicable here. In International Ass'n of Mach. v. N. L. R. B. supra [247 F.2d 418], we have already expressed our disagreement with the dictum in N. L. R. B. v. Aluminum Workers Int'l Union, 7 Cir., 1956, 230 F.2d 515, 520, to the effect that a "full and unqualified tender" made at any time prior to actual discharge renders the discharge unlawful. Here both the right to require Cunningham's discharge and the union demand for such discharge preceded Cunningham's tender. The dismissal by the railroad was a mere formality explicitly required by the terms of the collective bargaining agreement. Assuming that there was no discrimination in Cunningham's dismissal, we hold the tender was too late to be effective.

■ (2) As we have already indicated, in order to establish a breach by the union of its duty to represent the employees fairly, as the bargaining representative of the employees sanctioned by statute, it is not enough to prove that the union was wrong in demanding Cunningham's dismissal. This duty was no more than to forbear from "hostile discrimination." The arbitrariness shown must be of the bad faith kind. As Justice Stone suggested in Steele, 323 U.S.

at page 203, 65 S.Ct. 226, it is not violative of federal law that the union not satisfy all employees or that it improperly balance the rights and obligations of the various groups it represents. Something akin to factual malice is necessary. While the union may fail to strike a balance in the most equitable fashion possible it at least must try. We do not believe that the Ninth Circuit in Colbert v. Brotherhood of Railroad Trainmen, supra, 206 F.2d 9, intended to say any more than this.

(3) There are other legal questions of importance that hover in the background. We merely indicate their presence and feel that we should not attempt to decide them until they are presented in concrete form. It may well be that the requirement of "hostile discrimination" is not an essential ingredient of a claim by an employee that he was dismissed for a reason other than the non-payment of dues, because such a claim does not involve any charge of breach of duty by the union as bargaining agent vis-a-vis the employer. Moreover, it would seem that the "uniform requirement of dues" does not mean that the right to require the discharge of delinquent members is waived or precluded unless it is exercised as soon as the union member falls in arrears, even for a day. The natural inference is that the union is empowered to enforce its dues requirements with common sense, making allowances and concessions where need be.

But these problems just referred to in the foregoing paragraph of this opinion, as well as collateral issues other than those already referred to, are not yet ripe for resolution and may be considered on the remand.

We are grateful to Jerome T. Orans, Esq., and to Louis Lauer, Esq., for their exceptionally capable representation of appellant.

Reversed and remanded.