Waddell B. SELLS, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF FIREMEN AND OILERS, and F. R. McKernan, General Chairman, International Brotherhood of Firemen and Oilers, and Henry Froelich, Chairman and Steward Local 353, International Brotherhood of Firemen and Oilers, and Walter Froelich, Secretary Treasurer, Local 353, International Brotherhood of Firemen and Oilers, and William J. Mahoney, Steward, Local 353, International Brotherhood of Firemen and Oilers, and The Pittsburgh & Lake Erie Railroad Company, a corporation, Defendants.

Civ. A. No. 60-216.

United States District Court
W. D. Pennsylvania.

Jan. 9, 1961.

858

Stanley Bastacky and Reed & Bastacky, Pittsburgh, Pa., for plaintiff.

Loyal H. Gregg, Pittsburgh, Pa., and James L. Highsaw, Washington, D. C., for International Brotherhood of Firemen & Oilers et al., defendants.

James R. Orr, Pittsburgh, Pa., Mulholland, Robie & Hickey, Toledo, Ohio, and Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for Pittsburgh & Lake Erie R. Co.

WILLSON, District Judge.

This civil action is presently before me on similar motions filed by all defendants to dismiss the complaint or in the alternative for summary judgment.

Plaintiff, Wadell B. Sells, is a Negro. He seeks money damages from all defendants. He asserts that he has been discriminated against solely because of his race and color. He says all defendants, individually and collectively, have violated rights accruing to him under the Railway Labor Act, 45 U.S.C.A. § 151 et seq., as well as under the Constitution. As plaintiff claims the amount in controversy is over $10,000 and that his cause of action is based upon Federal law, the court understands that jurisdiction is under Section 1331 of Title 28 U.S.C. All defendants have appeared by counsel and no issue is raised as to venue.

Plaintiff names as defendants, the International Brotherhood of Firemen and Oilers, Pittsburgh Local 353, and the Brotherhood, that is the International Brotherhood of Firemen and Oilers. Both the Local and the National Brotherhood are unincorporated associations. He names as individual defendants, Henry Froelich, Walter Froelich and William J. Mahoney, members of both the Local and the National Brotherhood. He also names as a defendant, one F. R. McKernan, the general chairman of the International Brotherhood. The other defendant is the Pittsburgh and Lake Erie Railroad Company, a corporation, a common carrier engaged in interstate commerce and subject to the Railway Labor Act. Plaintiff says that the International Brotherhood and Local 353 were and are the duly designated representatives of the plaintiff and all other railroad employees under the union shop collective bargaining agreement entered into by

defendant railroad and its employees, pursuant to the Railway Labor Act.

It is noticed first that the motions to dismiss are filed under Rule 12, 28 U.S.C., as no answer has been filed. The motions raise two of the defenses which may be presented under Rule 12(b), to wit; defendants say that the court lacks jurisdiction over the subject matter because plaintiff failed to exhaust the grievance procedures provided for in the collective bargaining agreement and, second, that the complaint is subject to dismissal under Rule 12(b) (6) because it fails to state a claim upon which relief can be granted. The motions assert generally that the complaint fails to allege any contractual right for the violation of which plaintiff is entitled to recover damages. The motions are supported by affidavits and depositions.

Because, as all of the defendants have asserted as one of the bases for dismissal, the failure of the plaintiff to state a claim upon which relief can be granted and have presented matters outside of the complaint which have not been excluded by the court, the motions as provided in Rule 12, are to be treated as motions for summary judgment and disposed of as provided by Rule 56. Counsel have been orally heard at argument and were given reasonable time to file additional briefs and have availed themselves of the opportunity.

It appears that plaintiff commenced work with the railroad in the year 1926 as an ash wheeler. He was made a fireman in the powerhouse building in the year 1941. In 1942 he obtained a license as a stationary engineer from the City of Pittsburgh. Thereafter, from time to time, plaintiff applied for but never obtained a job as a stationary engineer. It appears further that the railroad building known as the powerhouse was divided into two areas, the boiler room and the engine room. The boiler room employees were designated as ash wheelers and firemen, each of them being a separate craft with different rates of pay; the operations in the engine room were performed by engineers and oilers, each

being a separate craft with different rates of pay. From time to time a reduction of the working force at the powerhouse was put into effect by the defendant railroad. For many years prior to 1955 all of the engineers, except for one colored person, and the oilers were white persons and all the firemen and ash wheelers were colored. In the process of reducing the work force, in 1955 the railroad and the brotherhood negotiated an agreement consolidating the rosters of the oilers and the ash wheelers into a "Helpers Roster", one effect being to reduce the work force from twenty-six to twenty-two jobs. In July of 1958 the helpers and the firemen's rosters were merged and the number of jobs reduced to nineteen. In August of 1958 the helpers positions were reduced from seven to four, leaving a total of sixteen jobs at the powerhouse. In January of 1959 the railroad leased its warehouse to a third party resulting in a further reduction in the work force, and then in October of 1959 the method of heating the boilers was changed from coal to automatic gas reducing the total number of jobs to five stationary engineers. At that time plaintiff Sells, along with others, was permanently furloughed. The defendant says that as of August, 1960, the force at the powerhouse was reduced to two engineers, and that as of the spring of 1961, the employees at the powerhouse will likely be reduced to one stationary engineer.

As the court understands the complaint, plaintiff charges that when he acquired his stationary engineer's license from the City of Pittsburgh in 1942 he then became qualified for employment with defendant railroad as a stationary engineer. When vacancies occurred he bid on such jobs but never received any of them. The nub of his complaint, as the court understands it, is found commencing in the 12th paragraph and in subsequent paragraphs where he says, " * * * defendants and each of them, acting individually and in concert, by actions or omissions, planned and executed a course of conduct, designed to

860

discriminate against the plaintiff solely because of his race or color. * * * " Plaintiff further charges that about January 1, 1937, the employees of the powerhouse were divided into a white section composed of engineers and oilers and a colored section composed of firemen and ashwheelers, and that all defendants, " * * * by custom and usage, agreement among themselves and conduct, concert and intimidation, * * * maintained the color line, by never permitting an ashwheeler or fireman to bid or apply for an engineer's job. * * * " He further charges that the defendants in the same manner, that is by conspiring among themselves, consolidated the class of ash wheelers, oilers, firemen and helpers into a craft of helpers, with the result that plaintiff was forever barred from bidding upon an engineer's job in the powerhouse, " * * * only because of his race or color and for no just cause. * * * " Plaintiff further avers that the actions of the defendants have deprived him of his rightful position on the engineer's roster. The complaint goes on to charge that as a result of the conspiracy among the defendants, as the work force in the powerhouse was reduced, the colored workers lost their jobs first, and that in spite of an agreement to the contrary between plaintiff and the defendant, he was given no consideration whatsoever by reason of his many years of service.

The complaint makes no reference to plaintiff's having proceeded with any of the grievance procedures set up in the bargaining agreement between the railroad and its employees. Defendants say that the plaintiff must proceed under the collective bargaining agreement before suit can be filed in this court. In reply to that contention plaintiff points out that his law suit is aimed not at a dispute between the railroad and its employees under the labor contract but is directed against his own union and the officers thereof as well as the railroad. There is no grievance procedure under the Adjustment Board for such a situation. Further plaintiff does not contend that the collective bargaining agreement is in any way discriminatory but asserts that its application by defendants, in concert, was discriminatory as against him and for which wrong he seeks damages against all defendants.

This civil action is unique in that plaintiff sues on behalf of himself only and claims damages rather than reinstatement. In the majority of the cases cited by counsel involving causes of action based upon racial discrimination the plaintiffs have represented themselves and other members of a class. The Supreme Court decision Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80, and a more recent decision, Cunningham v. Erie Railroad Company, 2 Cir., 266 F.2d 411, are authority for the proposition that plaintiff may maintain this action. It is believed that no useful purpose would be served in reviewing the many decisions cited in the Conley and Cunningham cases. Defendants urge that Gainey v. Brotherhood of Railway & Steamship Clerks, 3 Cir., 275 F.2d 342, requires that the complaint be dismissed for failure on the part of plaintiff to exhaust the grievance procedures as provided in the contract between the employees and the defendant railroad, but as plaintiff's counsel points out, that case did not involve racial discrimination and is not a precedent against plaintiff in the instant action.

It is pointed out in the Conley decision that the Brotherhood and the individual defendants here are required to represent plaintiff and other employees of the defendant railroad fairly and without discrimination because of race. The Supreme Court says that the Federal District Courts have the power to protect the employees against such " * * * invidious discrimination. * * * " As the court reads the complaint in the instant case, plaintiff is simply charging a discrimination contrary to the provisions of the Railway Labor Act. He says all defendants are guilty of such discrimination. Defendants have strongly urged that no discrimination in fact exists on the railroad or in the application of the

collective bargaining agreement, but that issue is a factual one and cannot be resolved under Rule 56. It may very well be that plaintiff in this case will be unable to show any discrimination. His complaint is not too precise on this point but it does not have to be under Rule 8(f) and as indicated in the Conley decision. Plaintiff bases his right to damages upon Federal law and under it he is entitled to attempt to prove that the defendants, individually and collectively, so applied the collective bargaining agreement as to damage him and that they did so because of his race and color. The motions will be denied.