Frank MARTINEZ, Plaintiff in Error,

v.

BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES et al., Defendants in Error.

No. 39371.

Supreme Court of Oklahoma.

July 23, 1963.

Neill P. McInnis, McInnis & Sullivan, Charles W. Ruiz, Oklahoma City, for plaintiff in error.

Milton Kramer, Washington, D. C., Cantrell, Douglass, Thompson & Wilson, Oklahoma City, for defendants in error.

HALLEY, Vice Chief Justice.

Frank Martinez, plaintiff, commenced this action in February, 1956, against Brotherhood of Maintenance of Way Employees defendant Union, and defendants Jones and Carroll who were General Chairman and President, respectively, of such Union.

Plaintiff by his amended petition alleged that he had been employed by his railroad employer for many years prior to September 20, 1954, at which time his employer terminated his employment. He alleged that the Union wrongfully required and demanded that his employer discharge him, thereby causing him loss of earnings and retirement benefits and other damages. He attached the Constitution and Bylaws of the Union to his amended petition and alleged that they required the Union to protect and secure his employment with the employer. He further alleged that the Union refused to accept the tender of dues and other payments offered by plaintiff on September 4 and September 16, 1954, which under the provisions of the Constitution "reinstated the membership of plaintiff in said Union."

Defendants' verified answer to plaintiff's amended petition alleged that the Union and plaintiff's employer entered into a union shop agreement effective December 31, 1962, and attached a copy of such agreement to the answer. In March, 1953, plaintiff became a member of the Union and retained such membership through March 31, 1954. Under the Constitution of the Union, dues payments were due quarterly in advance without demand or notice, and it was the responsibility of the member to know when his dues were payable, and to pay

them. The dues payment due April 1, 1954, was not made. A letter was sent to plaintiff by registered mail on May 20, 1954, calling his attention to his delinquency and the provisions of the union shop agreement, and urging payment of the dues for the quarter beginning April 1, 1954. Again on July 12, 1954, defendant Jones called plaintiff's attention to the situation and provided him with a copy of the union shop agreement. In August, 1954, the Union advised plaintiff's employer in writing that he was not complying with the terms of the union shop agreement and that he therefore was not entitled to continue in employment. On August 20, 1954, the employer advised plaintiff by registered mail that unless he requested within 10 days a hearing as provided in the union shop agreement his employment would be terminated as provided in the agreement. Plaintiff did not request such hearing. The answer also alleged that the union shop agreement required that plaintiff maintain his membership in the Union, which he did not do.

Plaintiff did not file a reply to the answer. Thereafter defendant filed a motion for judgment on the pleadings which was sustained on July 12, 1960. Plaintiff has appealed.

For reversal plaintiff argues several propositions, all of which are based primarily on the premise that plaintiff was not required to exhaust certain administrative remedies before bringing his action for damages in a court. Because of our view of the pleadings in this case, we do not need to decide whether plaintiff's premise stated above is correct. The controlling question is whether the acts of the defendants as alleged by the parties in the pleadings give rise to any liability against the defendants.

The pleadings affirmatively show that the reason the Union cited plaintiff to his employer was because of his failure to maintain his membership in the Union.

The union shop agreement provides, in part:

"Section 1. In accordance with and subject to the terms and conditions

hereinafter set forth, all employes of the carriers * * * shall, as a condition to their continued employment subject to such agreements, become members of the organization party to this agreement representing their craft or class * * *, and thereafter shall maintain membership in such organization; * * *.

* * * * * *

"Section 5. Each employe covered by the provisions of this agreement shall be considered by a carrier to have met the requirements of the agreement unless and until such carrier is advised to the contrary in writing by the organization. The organization will notify the carrier in writing * * * of any employe who it is alleged has failed to comply with the terms of this agreement and who the organization therefore claims is not entitled to continue in employment * * *. Upon receipt of such notice, the carrier will, within ten calendar days of such receipt, so notify the employe * * *. An employe so notified who disputes the fact that he has failed to comply with the terms of this agreement, shall within a period of ten calendar days from the receipt of such notice, request the carrier in writing * * * to accord him a hearing. * * *

"In the event the employe concerned does not request a hearing as provided herein, the carrier shall proceed to terminate his seniority and employment * * * not later than thirty days from receipt of the above described notice from the organization, unless the carrier and the organization agree otherwise in writing."

The applicable provisions of the Constitution of the Union are:

"Article XIV, Sec. 5. All dues and properly levied assessments must be paid in advance on or before the first day of January, April, July and October of each year * * *. It shall be the responsibility of the member to know when his dues are payable and when he may become or becomes delinquent, and no demand for payment of such dues or notice of non-payment thereof or of delinquency shall be required. * * * A member refusing or failing to pay his dues in full as prescribed in this Section is not in good standing, and shall not be entitled to a seat in his lodge. A member who becomes delinquent may reinstate his membership upon the payment of all back dues, or if three (3) months delinquent may reinstate on the payment of initiation fee and current quarter's dues, * * *."

Plaintiff in his petition alleged that he tendered dues and other payments which under the provisions of Article XIV, Sec. 5, reinstated his membership in the Union. By such pleading plaintiff admits that he was delinquent in payment of his dues. The quoted Article XIV, Sec. 5, provides that, while delinquent, plaintiff was not in good standing and not entitled to a seat in his lodge. Thus, he was automatically suspended from Union membership while delinquent. It was during the time of this delinquency and suspension that the Union reported to plaintiff's employer that he was not complying with the union shop agreement in that he was not maintaining his membership.

 From the above discussion it is clearly established that the Union's actions were lawful, rather than unlawful, in reporting to plaintiff's employer that his employment should be terminated. The question then arises: does plaintiff's belated tender of back dues and other payments transform the Union's lawful request for plaintiff's discharge into an unlawful one? The answer is no. Both the right to require his discharge and the request for his discharge preceded plaintiff's tender. If the employer had discharged plaintiff immediately upon expiration of the ten day period in which he had the right to request a hearing, the legality of the request and the discharge could not have been ques-

tioned. The discharge was a mere formality expressly provided for in the union shop agreement. The Union's lawful right to compel a delinquent member's discharge from employment should not be made to depend on the promptness of the employer in acting on the request for such delinquent member's discharge. To hold otherwise would encourage the practice of "free-riding" by employees; and the labor organization would be denied effective enforcement of the security provisions of the union shop agreement, as there would be no sanction for failure to maintain current union membership. The reported cases dealing with this point are in accord with this view: International Ass'n of Machinists v. National Labor Rel. Bd., (2 Cir.) 247 F.2d 414; National Labor Rel. Bd. v. Technicolor Motion Pic. Corp., (9 Cir.) 248 F.2d 348; Cunningham v. Erie Railroad Company, (2 Cir.) 266 F.2d 411; National Labor Rel. Bd. v. Pacific Transport Lines, Inc., (9 Cir.) 290 F.2d 14; General Motors Corp., 134 NLRB 1107; Labry v. Southern Pacific Company, (W.D.La.) 213 F.Supp. 400. We therefore hold that the Union's acts were lawful and since there were no issues to be decided by a jury, the trial court's judgment sustaining the motion for judgment on the pleadings was correct.

■ Finally, plaintiff contends that the Union had a duty to preserve his employment and could have done so by "simple written notification to the railroad that it thereby withdrew the citation against plaintiff." Such contention is without merit. The union shop agreement makes no provision for withdrawing such a citation once it is made. Also said agreement requires the employer to discharge the employee within a certain specified time, "unless the carrier (employer) and the organization (Union) agree otherwise in writing." Plaintiff has made no allegation that the employer would have or did agree to his continued employment. Therefore, here again, the pleadings do not present any issue of fact to be determined in the trial court.

Finding no error in the trial court's judgment upon the pleadings in favor of defendants and against plaintiff, we therefore affirm the judgment.

DAVISON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.