Frank **PIRONE** et al., Plaintiffs,

v.

The **PENN CENTRAL COMPANY** et al., Defendants.

Charles A. **SCOFIELD** et al., Plaintiffs,

v.

The **PENN CENTRAL COMPANY** et al., Defendants.

Nos. 68 Civ. 3148, 72 Civ. 2829.

United States District Court, S. D. New York.

Jan. 23, 1974.

Delson & Gordon, New York City, for plaintiffs; Ralph P. Katz, New York City, of counsel.

Robert M. Peet, New York City, for defendant Penn Central Co.

Schulman, Abarbanel & Schlesinger, Benjamin Schlesinger, Zachary Wellman, David Jaffe, New York City, for defendant Unions.

## OPINION

BONSAL, District Judge.

These two class actions arise from the merger of the Pennsylvania Railroad Company ("Pennsylvania") and the New York Central Railroad Company ("Central"), and the inclusion, following the merger, of the New York, New Haven and Hartford Railroad Company ("New Haven") to form the present Penn Cen-

tral Transportation Company.[1] Plaintiffs in both cases are or were members of the defendant Railway Marine Region ("RMR"), which at all times relevant to this action was, pursuant to the Railway Labor Act, plaintiffs' exclusive collective bargaining representative. Plaintiffs claim that RMR and the other defendant unions have violated their duty of fair representation by merging seniority rosters in a manner discriminatory against the plaintiffs, and that the defendant railroad has joined in the unlawful discrimination. Jurisdiction is asserted under 28 U.S.C. § 1337.

Class determinations were made in both cases. The class of plaintiffs in *Pirone* consists of all persons who were formerly employed as deckhands in the Central marine department prior to Central's merger with Pennsylvania, effective February 1, 1968, and who are or were at the time of the merger, members of, or represented for purposes of collective bargaining by, the defendant unions, excluding those persons who have disassociated themselves from the action. The class in *Scofield* consists of all persons who were formerly employed as deckhands in the New Haven marine department prior to New Haven's inclusion into Penn Central, effective January 1, 1969, and who are or were at the time of the inclusion, members of, or represented for purposes of collective bargaining by, the defendant unions, excluding those persons who have disassociated themselves from the action. The *Pirone* and *Scofield* cases were consolidated for purposes of trial only by Order filed September 4, 1973.

Defendant RMR is a subordinate body and a "region" of the defendant Inland Boatmen's Union of the Seafarers International Union of North America, Atlantic, Gulf, Lakes and Inland Waters District ("IBU"). IBU is an affiliate of the defendant Seafarers International Union of North America, Atlantic, Gulf, Lakes and Inland Waters District ("A & G District"). A & G District is an autonomous affiliate of the Seafarers International Union of North America, AFL–CIO ("SIUNA").

Defendant Gomer P. McGinty, at all times relevant, was the Regional Director of RMR. During the trial, the plaintiffs entered into a stipulation dismissing the complaint as to defendant McGinty individually.

Shortly after the complaint in *Pirone* was filed, the *Pirone* plaintiffs sought a temporary injunction, pending the determination of the action, to restrain Penn Central and the defendant unions from proceeding under an agreement relating to seniority rights. After a hearing on August 8, 1968, Judge Pollack denied the temporary injunction, finding that "[t]he position of the defendants in the suit has a strong semblance of disinterested fairness and merit," (Transcript at 189) and that "the testimony tends to give a rational explanation for the seniority provisions in the combined arrangement effective as of June 1, 1968" (Transcript at 189–190). Judge Pollack also pointed out the availability of "the speedy and possibly more efficient and economical grievance machinery set up by the contracts." (Transcript at 190–191).

The parties having waived a jury, both cases were tried before the court on October 23, 24, and 25, 1973. From the papers on file and the evidence introduced at trial, the following facts appear.

On May 20, 1964, Pennsylvania and Central entered into an "Agreement for Protection of Employees in Event of Merger of Pennsylvania and New York Central Railroads" ("1964 Protective Agreement") with a number of labor organizations, including SIUNA, acting on

---

1. Upon the merger of Pennsylvania and Central, the new railroad company was known as the Pennsylvania New York Central Transportation Company. On May 8, 1968, the name was changed to the Penn Central Company [hereinafter cited in the text as "Penn Central"]. Subsequently, on October 1, 1969, the defendant railroad adopted its present name, Penn Central Transportation Company.

behalf of RMR. The 1964 Protective Agreement provides, *inter alia,* that

". . . none of the present employees of either of the said Carriers shall be deprived of employment or placed in a worse position with respect to compensation, rules, working conditions, fringe benefits or rights and privileges pertaining thereto at any time during such employment."

The Interstate Commerce Commission made compliance with the 1964 Protective Agreement a condition of the authorization for the merger of Pennsylvania and Central.

At a time just prior to the merger, Pennsylvania deckhands enjoyed steady employment. Pennsylvania had 35 crews of 3 men each working on tug boats and about 25 men working in shore positions. The remainder of the 221 persons on the Pennsylvania deckhand seniority roster worked steadily as extra employees. On the other hand, Central deckhands, at the same period in time, worked only sporadically. Central had 7 crews of 3 men each working on tug boats, and approximately 8 men working in shore positions. Of the remainder of the 101 persons on the Central deckhand seniority roster, about 64 held no regular jobs, and many were either on furlough or working intermittently as extra employees.

The prospective merger of the Pennsylvania and Central deckhand seniority rosters generated considerable concern and bad feeling between Pennsylvania and Central deckhands, all of whom were represented by RMR. Pennsylvania deckhands feared that if the seniority rosters were "dovetailed," i. e. merged strictly on the basis of seniority with each of the constituent companies, they would lose their jobs to Central deckhands who had little or no work, but longer seniority. Central deckhands, on the other hand, feared that if the seniority rosters were "endtailed," i. e., merged by placing the Central roster below the Pennsylvania roster, they would lose seniority built up through the years. The officers of RMR informed the members that no agreement implementing the 1964 Protective Agreement would be entered into by RMR until the members had taken action to determine the method of merging the seniority rosters.

At the regular monthly RMR membership meeting for the Port of New York held on April 15, 1968 in two parts, one at 10:00 a. m. and the second at 8:00 p. m., at the Union Hall in Jersey City, New Jersey, the issue of merging the Pennsylvania and Central deckhand seniority rosters was, after lengthy and heated discussion, brought to a vote. All members of RMR, not just Pennsylvania and Central deckhands, were allowed to vote. The officers of RMR did not vote. By a show of hands vote [2] totaling 79 in favor and 40 against, with 4 abstentions, the RMR membership elected to merge the seniority rosters by placing the Central roster on the bottom of the Pennsylvania roster.

Disappointed with the outcome of the vote, plaintiffs Pirone, Elbert and several others in April and May 1968 obtained signatures on petitions from some 145 members of RMR protesting the "action taken or to be taken by Regional Director G. P. McGinty" in placing former Pennsylvania deckhands at the top of the seniority roster and former Central deckhands at the bottom of the seniority roster, and urging dovetailing as the only fair method of merging the seniority rosters. Plaintiff Pirone brought the signed petitions to the SIUNA office in Brooklyn, New York where he met with Earl Shepard, then National Director of IBU. Shepard advised that the problem was one to be handled by RMR.

As a result of the dissatisfaction with the April 1968 vote, the RMR leadership decided to call for a second vote on the issue of merging the Pennsylvania and Central deckhand seniority rosters. No-

2. Vote by show of hands was the normal procedure used in voting on all matters of RMR business except election of officers and amendment of the constitution.

tice was widely posted throughout the harbor, and a second vote was held at the regular monthly RMR membership meeting for the Port of New York on June 10, 1968. Again the vote, by a margin of 87 to 29, with 1 abstention, was in favor of endtailing the seniority rosters with the Central roster on the bottom. Plaintiff Pirone admitted at trial that he was unable to bring out the vote from supporters of his position who had allegedly signed his petitions.

Pursuant to the vote of the RMR membership, McGinty, on July 2, 1968, signed an implementing agreement with Penn Central which placed all former Central deckhands below all former Pennsylvania deckhands in seniority. Penn Central entered into the implementing agreement despite prior notice from plaintiffs' counsel of the possible illegality of a non-dovetailing arrangement. Penn Central's position was that the manner of merging the seniority rosters was a matter to be determined by the unions.

However, also in July 1968, the RMR Assistant Regional Director and representatives of Penn Central entered into a collateral agreement which provided that in spite of the endtailing of the seniority rosters, former Central deckhands would retain priority to former Central jobs. As a result of this agreement, jobs which had regularly been assigned to or worked by former Central deckhands continued to be worked by them, or by extras formerly employed by Central, without regard to their actual status on the merged seniority roster. There was no evidence that a former Pennsylvania deckhand ever bumped a former Central deckhand on a former Central job. In addition, deckhand employees of the newly formed Penn Central who were without regular positions received protection under the 1964 Protective Agreement.

On July 31, 1968, a merged seniority roster was posted by Penn Central in accordance with the implementing agreement. A timely protest to the seniority roster filed with Penn Central by certain former Central deckhands was denied on October 11, 1968.

A similar pattern of events occurred with the inclusion of New Haven into Penn Central.

By agreement of January 19, 1967 among Pennsylvania, Central and a number of labor organizations, including SIUNA, the terms and conditions of the 1964 Protective Agreement were extended to New Haven employees, including the *Scofield* plaintiffs. The Interstate Commerce Commission made compliance with the 1964 Protective Agreement a condition of the authorization for the inclusion of New Haven.

Just prior to the inclusion of New Haven into Penn Central, New Haven had 27 men working on tug boats and 6 men working in shore positions. The New Haven deckhand seniority roster contained the names of 76 men.

The issue of merging the New Haven deckhand seniority roster with the Penn Central deckhand seniority roster was, after due notice, put to a vote of the RMR membership at the regular monthly membership meeting for the Port of New York held in two parts on March 10, 1969. At that time, a motion to place New Haven deckhands on the bottom of the Penn Central roster was carried by a total vote of 74 in favor and 40 against. Subsequently, a petition signed by 34 members of RMR, formerly employed by New Haven, protesting the endtailing arrangement voted at the March 1969 meeting, was mailed to the President of SIUNA. The petition was referred by SIUNA Vice President Earl Shepard to RMR Regional Director McGinty, where the protests were denied.

Pursuant to the vote of the RMR membership, McGinty, on March 24, 1969, signed an implementing agreement with Penn Central which provided for the merger of seniority rosters by placing the former New Haven deckhand roster on the bottom of the Penn Central deckhand roster. As in the case of the merger of the Pennsylvania and Cen-

tral deckhand seniority rosters, RMR entered into a collateral agreement with Penn Central which provided that in spite of their position on the merged roster, former New Haven deckhands would retain priority to former New Haven jobs. There was no evidence that a former Pennsylvania or Central deckhand ever bumped a former New Haven deckhand on a former New Haven job. In addition, former New Haven deckhands without regular positions with Penn Central received protection under the 1964 Protective Agreement.

On or about April 8, 1969, a merged seniority roster was posted by Penn Central in accordance with the implementing agreement. A timely protest to the seniority roster filed with Penn Central by certain former New Haven deckhands was denied on July 2, 1969.

■ To establish a breach of the statutory duty of fair representation, plaintiffs must show that a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). The Court of Appeals has pointed out that the duty to represent the employees fairly is:

"no more than to forbear from 'hostile discrimination.' The arbitrariness shown must be of the bad faith kind. . . . Something akin to factual [sic] malice is necessary." Cunningham v. Erie Railroad Co., 266 F.2d 411, 417 (2d Cir. 1959).

■ The plaintiffs have on the present record failed to discharge their burden of proving that the defendant unions have acted either arbitrarily, discriminatorily or in bad faith. Faced with the reality that any system of merging the seniority rosters would be unfavorable to some members of the collective bargining unit, RMR was not unreasonable in submitting the issue of merging the seniority rosters to a vote of its membership. Cf. Keeley v. Refiners Transport & Terminal Corp., 60 LC ¶ 10,214 (E.D.Mich.1969); Bolt v. Joint Council of Dining Car Employees, 45 LC

¶ 17,579 (S.D.Fla.1961), aff'd 45 LC ¶ 17,580 (5th Cir. 1962). In Ford Motor Co. v. Huffman, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953), the Supreme Court recognized the dilemma facing RMR:

"Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion."

Nor was the decision reached by the vote of the RMR membership based on capricious or arbitrary factors. Dovetailing the seniority rosters on a straight seniority basis under the circumstances as presented by the evidence would have resulted in former Pennsylvania deckhands being displaced from their steady employment by former Central and New Haven deckhands with longer seniority but less work.

Moreover, RMR evidenced its good faith in attempting to provide maximum protection for all its members by entering into collateral agreements with Penn Central which significantly modified the endtailing merger of the rosters. Under these agreements, former Central and New Haven deckhands retained priority to former Central and New Haven jobs respectively. There was no evidence that a former Pennsylvania deckhand ever bumped a former Central deckhand on a former Central job, or that a former Pennsylvania or Central deckhand ever bumped a former New Haven deckhand on a former New Haven job, in spite of a higher seniority rating on the merged roster. By reason of these agreements, former Central deckhands retained their pre-merger seniority on former Central jobs and former New Haven deckhands retained their pre-

merger seniority on former New Haven jobs.

Not only have plaintiffs failed to prove unlawful discrimination by the defendant unions, but they have also failed to establish any injury as a result of the merger of the seniority rosters by the endtailing method. Without a showing of injury, plaintiffs are not entitled to the injunctive and monetary relief which they are seeking.

It follows that since plaintiffs have failed to prove unlawful discrimination by the defendant unions, they cannot succeed against Penn Central on their claim that Penn Central has joined in the unlawful discrimination. Plaintiffs have not proved that they have been deprived of employment or placed in a worse position with respect to compensation, rules, working conditions, fringe benefits or rights and privileges pertaining thereto in violation of the 1964 Protective Agreement.

Accordingly, the defendants are entitled to a judgment dismissing the complaints.

The foregoing constitutes the court's findings of fact and conclusions of law. Rule 52(a), Fed.R.Civ.P.

Settle judgment on notice.