Maurice D. **CARROLL**, Plaintiff, Appellant,

v.

**BROTHERHOOD OF RAILROAD TRAINMEN** et al., Defendants, Appellees.

No. 7320.

United States Court of Appeals First Circuit.

Oct. 29, 1969.

------

Samuel Leiter, Boston, Mass., with whom Gordon & Leiter, Boston, Mass., was on brief, for appellant.

David W. Walsh, Lexington, Mass., with whom Ralph F. Cahill, Milton, Mass., was on brief, for The New York, New Haven and Hartford Railroad Company, appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This interlocutory appeal presents a difficult problem of joinder under the Railway Labor Act, 45 U.S.C § 151 et seq. Plaintiff seeks relief against both the Brotherhood of Railroad Trainmen and the New Haven Railroad on the grounds that the New Haven's failure to reinstate him after discharge for cause was motivated solely by its knowledge of the Brotherhood's hostile discrimination. The district court has dismissed plaintiff's action against the Railroad. We must decide whether under these circumstances an employee has a right to relief against his former employer.

Since this issue arose out of defendant Railroad's motion to dismiss under Rule 12(b), Fed.R.Civ.P., we begin with the allegations of plaintiff's complaint. Plaintiff asserts that he and two other employees were discharged in February 1966, for the same incident of insubordination. The Brotherhood, which allegedly controls grievance procedures, secured prompt reinstatement for the other two employees by presenting their pleas for clemency to management. Plaintiff asserts, however, that Brotherhood officials, incensed by his advocacy of right-to-work laws, refused to present his plea for clemency despite his repeated requests, but instead proceeded to contest the merits of plaintiff's dismissal. Plaintiff then adds this critical allegation:

> "At all material times, the Defendant Railroad Company acted with full knowledge that said Defendant Labor Organizations and individual Defendants were wrongfully discriminating against the Plaintiff, and acted in complicity with the said Defendants in failing to grant quick reinstatement to the Plaintiff on the same basis [as the other two employees], and thereby became a party to said hostile discrimination against the Plaintiff." ·

On the basis of this allegation, plaintiff prays for reinstatement, back pay, and compensatory damages from his former employer.

Several months after this action had been filed, plaintiff's grievance reached a Special Board of Adjustment, which found that plaintiff had been properly discharged. The district court then dismissed plaintiff's action against the Railroad on two grounds: (1) because plaintiff's allegations were "inadequate" to state a cause of action, and (2) because the judgment of the Special Board of Adjustment bars any collateral attack on the validity of plaintiff's discharge.

In arguing this appeal, plaintiff has conceded that he seeks no review of the merits of his discharge. Instead, we understand him to contend that an employer who properly discharges an employee may nonetheless be liable for cooperating in the union's subsequent hostile dis-

crimination. The wrong alleged in this case, as we understand it, was the Railroad's continued cooperation with the Brotherhood in processing plaintiff's grievance even though the Railroad knew that plaintiff would prefer quick reinstatement on a clemency basis and had already granted such relief to the other two employees. Such complicity, plaintiff argues, should render the Railroad liable regardless of the decision of the Special Adjustment Board.

We agree with plaintiff that the decision of the Special Board is not dispositive of this case. The Board of Adjustment and its various statutory offspring have primary jurisdiction over disputes between employer and employee concerning the meaning and application of collective bargaining agreements. 45 U.S.C. § 153 (First) (i); Gunther v. San Diego & Arizona Eastern Railway Co., 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed. 2d 308 (1965). But the Adjustment Board has no jurisdiction over disputes between employees and their bargaining representative. Conley v. Gibson, 355 U.S. 41, 44–45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Moreover, the Adjustment Board is an inappropriate forum for presenting claims of hostile discrimination because it is dominated by the very parties who allegedly discriminated. Steele v. Louisville & Nashville R.R. Co., 323 U.S. 192, 205–206, 65 S.Ct. 226, 89 L.Ed. 173 (1944). Thus the courts have consistently upheld joinder of the employer when the employee's primary dispute was with his union and the employer is joined only to afford complete relief. Steele v. Louisville & Nashville R.R. Co., supra at 205–206, 65 S.Ct. 226; Rumbaugh v. Winifrede R.R. Co., 331 F.2d 530, 536–537 (4th Cir.), cert. denied, 379 U.S. 929, 85 S.Ct. 322, 13 L. Ed.2d 341 (1964); Cunningham v. Erie R.R. Co., 266 F.2d 411, 416 (2d Cir. 1959); Richardson v. Texas & N. O. R. R. Co., 242 F.2d 230, 235–236 (5th Cir. 1957). Assuming that joinder is otherwise appropriate, an intervening decision of the Adjustment Board should not bar judicial relief against the Railroad.

Brady v. Trans World Airlines, 401 F.2d 87, 92–94 (3d Cir.1968), cert. denied, International Ass'n of Machinists v. Brady, 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969).

The Railroad is not, however, an indispensable party in this litigation. Conley v. Gibson, supra at 45 of 355 U. S., 78 S.Ct. 99. To justify permissive joinder, plaintiff must demonstrate that he has some right to relief against the Railroad growing out of the events in question. Fed.R.Civ.P. Rule 20(a). While it is well established that federal courts have ancillary jurisdiction over the employer in an action for the union's hostile discrimination, it is still necessary to state a claim on which relief may be granted against the employer. The nature of this claim is far from clear.

The decisions which established the duty of fair representation involved claims by Negroes that their statutory bargaining representatives had negotiated racially discriminatory terms in the collective bargaining agreement. Steele v. Louisville & Nashville R.R. Co., supra; Brotherhood of Railway Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952). Redress of the union's wrong in these cases required employer as well as union action. The primary concern of the courts seemed to be so to construe the primary jurisdiction of the Adjustment Board that complete relief could be granted in one federal court action against both union and employer. See, e.g., Steele v. Louisville & Nashville R.R. Co., supra at 205–206 of 323 U.S., 65 S.Ct. 226. The nature and source of the employer's liability were seldom discussed, and then only briefly. Rolax v. Atlantic Coast Line R. Co., 186 F.2d 473, 480–481 (4th Cir.1951); Richardson v. Texas & N. O. R. R. Co., supra at 235–236 of 242 F.2d.

Subsequent developments, however, have made the nature of the right to relief against the employer a critical issue. The duty of fair representation has been expanded to embrace not only contract negotiations, but also the handling of individual grievances, Conley v. Gibson,

*supra,* and has been construed to forbid not only racial discrimination, but all forms of arbitrary treatment. Cunningham v. Erie R. R. Co., *supra* at 415 of 266 F.2d. Since the courts are now willing to inspect in some detail the union's dealings with its members, it becomes important to recognize limits to employer liability for union misconduct. To date, this issue has been most thoroughly explored in cases where the union has procured an employee's dismissal from a closed shop by falsely representing that he had failed to pay his union dues, but employer liability in these cases rests on the explicit provisions of 45 U.S.C. § 152 (Eleventh), which strictly limits the circumstances in which an employer may enforce a union shop agreement. Brady v. Trans World Airlines, Inc., *supra* at 100–101 of 401 F.2d; Cunningham v. Erie R.R. Co., 358 F.2d 640, 645 (2d Cir.1966).

Plaintiff offers a broader theory of employer liability. Placing special reliance on Long Island City Lodge 2147 of Broth. of Railway and S. S. Clerks, Freight Handlers, Exp. and Station Emp. v. Railway Express Agency, Inc., 217 F.Supp. 907, 910 (S.D.N.Y. 1963), he argues that the employer should be liable for any knowing cooperation in the union's breach of its statutory duty. *See also* Thompson v. New York Central R. R. Co., 361 F.2d 137, 151 (2d Cir. 1966) (Lumbard, C. J., dissenting). On this theory, the employer who cooperates in hostile discrimination may be likened to one who participates in a trustee's violation of his fiduciary duties; in both cases, those who cooperate in a breach of trust should be jointly liable for the resulting injury. Restatement 2d, Trusts § 326.

We recognize the force of this position. Certainly the statutory policy of fair representation would be advanced by imposing liability on both the erring fiduciary and all those who cooperate with him. Nevertheless, this analogy, if indiscriminately applied, might discourage not only hostile discrimination, but also the orderly processing of grievances.

The union must often make good-faith tactical decisions in spite of employee disagreement. *Compare* Vaca v. Sipes, 386 U.S. 171, 191, 87 S.Ct. 903, 17 L. Ed.2d 842 (1967). If the grievance procedure is to function smoothly, the employer must in most circumstances be able to rely on the union's disposition in spite of its awareness of employee objections. This is particularly true when, as here, the union chooses one route to relief while the employee would prefer another. To protect itself from the kind of liability which plaintiff advocates, an employer would be forced to ignore union representations and take the initiative in dealing with employees whenever it suspects a discriminatory union motive. Such conduct would, we think, have a much more detrimental effect on labor-management relations than the limited form of employer "complicity" which plaintiff alleges in this case.

■■ Of course, an employer should not be able to rely on discriminatory union conduct to justify what would otherwise be a breach of its own contractual obligations, Richardson v. Texas & N. O. R. R. Co., *supra* 235–236 of 242 F.2d, or a violation of its own duties under the Railway Labor Act, Brady v. Trans World Airlines, Inc., *supra* at 100–101 of 401 F.2d; *cf.* Wallace Corp. v. N.L.R. B., 323 U.S. 248, 255–257, 65 S.Ct. 238, 89 L.Ed. 216 (1944). But the Railroad in this case has complied with its contractual duties, as plaintiff concedes, and, while it is conceivable that employer complicity in union discrimination may amount to the kind of "coercion" forbidden by 45 U.S.C. § 152 (Fourth), *cf.* N.L.R.B. v. Miranda Fuel Oil Co., 326 F.2d 172, 181–184 (2d Cir.1963) (Friendly, J. dissenting), we hold that the employer conduct alleged in this case does not violate the statute. Indeed, were we to hold otherwise, the Railroad's allegedly complicitous and therefore wilful refusal to rehire would constitute not only a civil wrong, but also a separate crime for each day of continuing refusal. 45 U.S.C. § 152 (Tenth). This would be a Draconian penalty to

impose for failing to reinstate an employee who, we must assume, had been properly fired for insubordination. However difficult it may be to define the point at which employer-union cooperation becomes culpable complicity, we are satisfied that such point has not been reached in this case.

Affirmed.