421 F.2d 1219
 73 L.R.R.M. (BNA) 2451
 Catherine G. SIMBERLUND, as Executrix of the Estate of
William H. Simberlund, deceased, Rudolph Storch
and John F. Schenck,
Plaintiffs-Appellants-Appellees,
v.
The LONG ISLAND RAIL ROAD COMPANY, and the United
Transportation Union, Successor in interest to the
Brotherhood of Locomotive Firemen and Enginemen,
Defendants-Appellees, and Henry H. Franklin, John A. Riker,
John A. Binder, Harry A. Porch, Defendants-Appellees-Appellants.
 Nos. 139, 140, Dockets 33596, 33609.
 United States Court of Appeals, Second Circuit.
 Argued Oct. 15, 1969.
Decided Feb. 2, 1970.
 
 Charles T. Matthews, Huntington, N.Y. (Corwin & Matthews, Huntington, N.Y., of counsel), for plaintiffs-appellants-appellees.
 James T. Gallagher, Jamaica, N.Y. (George M. Onken, Jamaica, N.Y., of counsel), for defendant-appellee the Long Island Railroad Co.
 Paul G. Reilly, Jr., New York City (Reilly, Fleming & Reilly, New York City, of counsel), for defendants-appellees-appellants.
 Before FRIENDLY, HAYS and ANDERSON, Circuit Judges.
 HAYS, Circuit Judge:
 
 
 1
 This case has its origins in the efforts of the Long Island Rail Road to alleviate the shortage of engineers which developed on its road during the Second World War. The Long Island normally secured engineers from the ranks of the firemen according to promotion rules prescribed by Article 10 to the Chicago Joint Agreement, which was incorporated into the collective bargaining agreement then in effect between the Long Island and the Brotherhood of Locomotive Firemen and Enginemen (Firemen), the union representing the firemen on the railroad. Article 10 provided that firemen who had fired for approximately three years would be called in the order they appeared on the firemen's seniority roster, and upon passing an examination given by the employer, would be promoted to engineer. The problem facing the Long Island in early 1944 was that there were no available firemen with the three years' continuous service experience which this agreement was interpreted to require.
 
 
 2
 Appellants Simberlund,[1] Storch and Schenck however, who were at that time employed as firemen on the Long Island, had worked for the railroad before, and although they had not been re-employed for a sufficient length of time to fulfil the three-year continuous service requirement, when their previous period of employment was considered, they each had at least three years aggregate service experience. They had also passed the requisite examinations.
 
 
 3
 Rather than hire engineers off the property, the Long Island and the Firemen agreed that it would be preferable to promote firemen with the necessary aggregate experience out of turn and ahead of those firemen who were senior in immediately preceding service but who did not have the requisite total service experience. Accordingly, appellants Simberlund, Storch and Schenck were promoted to engineers in June and July of 1944 and were given engineer seniority dates of June 15, 1944, June 16, 1944 and July 14, 1944, respectively.[2] Since appellants had been promoted for reasons beyond their control, it was decided that they would also be allowed to retain their seniority dates on the firemen's roster.
 
 
 4
 In 1949, five years after appellants were promoted, M. E. McMahon, the General Chairman of the Brotherhood of Locomotive Engineers (Engineers) protested to the Long Island concerning its failure to give firemen senior to appellants, who were subsequently promoted to engineer status, a standing ahead of appellants on the engineers' seniority roster without regard to whether such firemen were eligible for promotion in 1944.[3] As a result of this protest, and after it was discussed at a meeting between the Long Island and the two Brotherhoods, a revised engineers' seniority roster was issued which ranked appellants behind all those who had been senior to them on the firemen's roster.
 
 
 5
 Appellants had previously been notified that this action would be taken and had protested the decision to the Long Island, to no avail. After the revised roster was posted, appellants enlisted the aid of their union, the Firemen. The Firemen filed a protest with the Long Island on behalf of appellants, and formal contract grievance procedures ensued, resulting, after the Long Island rejected appellants' protest, in the submission of the case to the National Railroad Adjustment Board. Here the case languished for many years. Finally, on December 12, 1958, the case was reached for hearing before the Board and was adjourned for 60 days.
 
 
 6
 In late December of 1958, appellants Simberlund and Storch met with officials of the Firemen. At that meeting, International President Gilbert suggested that their case could not be won before the National Board because of the unfavorable composition of that body. The Board was composed of five representatives of the carriers and one representative from each of the five major operating unions, and it was presumed that the Engineers would side with the carriers, thus making it highly unlikely that a favorable majority could be obtained. Consequently, it was decided that the case should be withdrawn for submission to one-man arbitration on the property. This was agreed to by the Long Island. Thereafter, on March 14, 1959, H. H. Franklin, General Chairman of the Long ,Island local of the Firemen, invited appellants to attend the next lodge meeting in order to apprise the Grievance Committee of the facts concerning their claim, and on October 14, 1959, he advised them that arrangements were being made to submit the case to the special one-man board. Subsequent events, however, were to determine that the case would never be submitted to the one-man arbitration board.
 
 
 7
 On July 10, 1960, the craft of railroad trainmen employed by the Long Island went out on strike and, as a result, succeeded in obtaining wage increases. Thereafter, the Firemen requested renegotiation of their contract with the Long Island to provide for similar wage increases. Although the president of the Long Island had indicated that new contracts would be negotiated with all the craft unions to provide benefits equal to those obtained by the trainmen, preliminary conferences between the Long Island and the Firemen failed to produce agreement, and in November of 1960, Harry A. Porch, a Vice President of the Firemen's Grand Lodge, was called in to assist in negotiations.
 
 
 8
 In January 1961, Porch succeeded in obtaining an additional fifty cents per tour of duty for the firemen. Porch continued to bargain for further benefits, and the result was an offer by the Long Island to grant an additional twenty-five cent raise to the firemen in return for the withdrawal of all pending Firemen claims and grievances, including appellants'.
 
 
 9
 At this juncture, Porch arranged a meeting with appellants to discuss the merits of their claim. Simberlund and Storch met with Porch and gave him a full explanation of their claim, attempting to persuade him of its validity. Porch, however, after listening to appellants' explanation, was convinced that their promotion had been improper and advised appellants that their claim had no merit.
 
 
 10
 Thereafter, on March 23, 1961, Porch concluded a second agreement with the Long Island which granted to the firemen additional wage benefits in return for the withdrawal of certain pending Firemen claims and grievances. Appellants' claim was one of those withdrawn from further consideration. Shortly after this agreement was entered into, its contents were reported to the membership of the Firemen's local at a meeting which appellants attended.[4] Storch also learned independently of the disposition of his claim in March or April of 1961 from Robert Hamilton, an Assistant Road Foreman of Engines.
 
 
 11
 Appellants, however, contend that officials of the Firemen attempted to mislead them into believing that their claim was still pending. After Hamilton had informed Storch that his claim had been dropped, Storch asked John Binder, a member of the Grievance Committee, about his claim. Binder told him that it had not been settled. Upon receiving this answer from Binder, Storch wrote to International President Gilbert and received in return a copy of a letter written by Franklin, the local General Chairman, to Gilbert. This letter indicated that the case had been settled and that no notice of appeal had been received. Storch then wrote to Franklin asking for an explanation of the agreement disposing of his claim. Franklin's reply stated that Porch would be returning to dispose of the rest of the docket of cases and that when negotiations were finished, a copy would be sent to Storch. Storch had also written to T. F. Kustes, the Long Island's Manager of Personnel, inquiring about the March 1961 agreement. Kustes wrote back stating that the dispute as to seniority status had been disposed of and suggesting that Storch contact Franklin to obtain the details. Storch then wrote back to both Franklin and Kustes sending to each the letter he had received from the other. The replies he received to these letters added nothing to what he had learned before. During this period after March 1961, Storch also attended the monthly lodge meetings of the Firemen and inquired of Franklin concerning his claim. His repeated answer was that the claim was still pending.
 
 
 12
 The source of this confusion was the Firemen's interpretation of the March 1961 agreement. Franklin, Binder and Porch were all of the opinion that this agreement withdrew only the claim for lost pay and that the claim for restoration of seniority status was still pending. Indeed, upon examination before trial, Franklin stated that he thought the seniority claim was still open, although he was of the opinion that this was a matter now within the jurisdiction of the Engineers. However, it appears that neither Franklin nor any other official of the Firemen ever specifically explained to appellants that it was the seniority claim that was still considered to be pending or gave to them a copy of the March 1961 agreement.[5] The union officials apparently considered that appellants had been adequately apprised of the manner in which their claim was disposed of by the report on the agreement given at the lodge meeting attended by appellants.
 
 
 13
 In June 1963, appellants commenced this action in the Supreme Court of New York against the Long Island and the individual defendants. The complaint charged, inter alia, that the defendants had conspired to deprive appellants of their claims for back pay and seniority in violation of the Firemen's duty of fair representation and sought damages for lost pay and a judgment compelling the restoration of appellants to their former positions on the engineers' seniority roster. The action was subsequently removed to the United States District Court for the Eastern District of New York. After a temporary stay during which the Long Island sought unsuccessfully to have the National Mediation Board appoint a 'partisan member' to a special board of adjustment the Long Island had attempted to establish to hear the dispute,[6] the case went to trial. During the trial, the district court permitted amendment of the pleadings to name the Firemen as a party defendant. At the conclusion of the trial the complaint was dismissed. Appellants appeal from that order.[7]
 
 
 14
 We find ample support for the trial judge's finding that the Firemen did not violate its duty of fair representation in the handling of appellants' claims and for this reason affirm the dismissal of the action.
 
 I.
 
 15
 In its brief, the Long Island urges, inter alia, that the issues presented in this suit should properly be resolved by the National Railroad Adjustment Board or, alternatively, by a Special Board of Adjustment. Respondents, however, alleged in their complaint that the act of withdrawing their claim was done 'with a malicious and wilful intent' and for the sole purpose of advancing the interests of others to the 'prejudice and damage' of the individual appellants. Thus, in essence, respondents charge the Firemen with violating their duty of fair representation. This duty, imposed by the Railway Labor Act, protects all members of the collective bargaining unit against arbitrary, discriminatory or bad faith conduct on the part of their union.
 
 
 16
 It is now well established that the federal courts, not the railroad adjustment boards, have jurisdiction over actions by employees to enforce this duty. Glover v. St. Louis-S.F.R.R. Co., 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969); Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Steele v. Louisville & N.R.R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). Not only do the railroad adjustment boards lack the power to grant the kind of relief necessary to remedy such abuses when they are found to have occurred, but it is clearly inappropriate to submit such controversies to a doby 'in large part chosen by (those) against whom (the employees') real complaint is made.' Steele v. Louisville & N.R.R. Co.,supra at 206, 65 S.Ct. at 234; Glover v. St. Louis-S.F.R.R. Co., supra, 393 U.S. at 329-330, 89 S.Ct. 548. Resort to the deferal courts to redress a breach of this duty is thus appropriate. And although the duty was at one time limited to the prevention of racial discrimination within the unions, it is now clear that the duty protects against all forms of hostile discrimination and applies in the negotiation and settlement of both major and minor disputes. Vaca v. Sipes, 386 U.S. 171, 190-193, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Conley v. Gibson, supra, 355 U.S. at 46-47, 78 S.Ct. 99 (1957); Thompson v. Brotherhood of Sleeping Car Porters, 316 F.2d 191, 198-199 (4th Cir. 1963); Gainey v. Brotherhood of Railway & Steamship Clerks, 313 F.2d 318, 324 (3d Cir. 1963); Ferro v. Railway Express Agency, Inc., 296 F.2d 847, 850 (2d Cir. 1961); Cunningham v. Erie R.R. Co., 266 F.2d 411, 415-416 (2d Cir. 1959); Mount v. Grant Internat'l Brotherhood of Locomotive Engineers, 226 F.2d 604, 607 (6th Cir. 1955), cert. denied, Grand Intern. Broth. of Locomotive Engineers v. Mount, 350 U.S. 967, 76 S.Ct. 436, 100 L.Ed. 839, (1956). The allegations made by appellants in their complaint and the evidence introduced at trial sufficiently raise the question of whether the Firemen acted in bad faith in representing appellants to justify federal court jurisdiction over appellants' claim against the Firemen. See Conley v. Gibson, supra, 355 U.S. at 45-48, 78 S.Ct. 99; Ferro v. Railway Express Agency, Inc., supra, 296 F.2d at 851.[8]
 
 
 17
 Jurisdiction over the Long Island is also established by reason of appellants' allegations of a 'conspiracy' between the Long Island and the Firemen to discriminate against appellants.[9]
 
 II.
 
 18
 There is no question in this case of the authority of the Firemen to act as appellants' agent. The Firemen had the authority to settle or withdraw appellants' grievances by virtue of Article 9, Section 16(b) of the Firemen's constitution. This section provides that upon joining the Firemen, each member authorizes the Union and its officials to act as his agent in settling, adjusting or compromising all his claims, grievances and disputes. This provision was sufficient to vest authority in the Firemen to act in appellants' behalf. Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711, 738-739 n. 38, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945), 327 U.S. 661, 663 n. 2, 66 S.Ct. 721, 90 L.Ed. 928 (1946). The authority so given could be withdrawn by the union member by giving written notice to the Firemen. Appellants, however, did not act to do so until after the Firemen had reached agreement with the Long Island to withdraw their claims. Appellants contend that they were prejudiced in this regard in that they had no notice that the Firemen intended to withdraw their claims. To this contention we do not accede. While appellants may not have been aware of the specific steps which the Firemen intended to take with regard to their claims, they did have a meeting with Porch, the special negotiator, who informed them that he considered their claims to be without merit. We believe this information was sufficient to put appellants on notice that if they did not withdraw the authority they had conferred on the Firemen, a settlement unfavorable to them might be concluded. And whatever effect should be given to the Firemen's failure to notify appellants of the precise settlement reached, to which we will address ourselves shortly, that failure cannot operate to revoke the Firemen's authority to make the settlement already concluded. For even if appellants had been notified immediatedly of the precise terms of the March 23 agreement, it would obviously have been too late for them to revoke the Firemen's authority to make that settlement.
 
 
 19
 Appellants, however, contend that in agreeing with the Long Island to withdraw their claims, the Firemen breached its duty of fair representation.
 
 
 20
 The duty of fair representation protects the employee against arbitrary, discriminatory or bad faith conduct on the part of his union in the settlement of grievance claims. Vaca v. Sipes, supra, 386 U.S. at 190, 87 S.Ct. 903; Conley v. Gibson, supra, 355 U.S. at 46, 78 S.Ct. 99; Steele v. Louisville & N.R.R. Co., supra, 323 U.S. at 203, 65 S.Ct. 226; Cunningham v. Erie R.R. Co., supra, 266 F.2d at 415-417. In Cunningham v. Erie R.R. Co., supra at 417, we emphasized that before a union can be charged with arbitrary or discriminatory action, it must be shown that the union acted in bad faith. Accord, Gainey v. Brotherhood of Railway and Steamship Clerks, supra, 313 F.2d at 323-324; Balowski v. International Union, 372 F.2d 829, 834-835 (6th Cir. 1967). Whether a union has breached its duty of fair representation thus depends, in each case, upon an examination of the relevant facts. Ferro v. Railway Express Agency, Inc., supra, 296 F.2d at 851; Thompson v. Brotherhood of Sleeping Car Porters, supra, 316 F.2d at 202; Balowski v. International Union, supra, 372 F.2d at 834.
 
 
 21
 In resolving the issue of fair representation, appellants seek to involve us in a consideration of the merits of their seniority claim. It is not, however, the function of the court to inquire into the merits of appellants' grievance. In Vaca v. Sipes, supra, the court said 386 U.S. at pp. 192-193, 87 S.Ct. at p. 918:
 
 
 22
 'If a union's decision that a particular grievance lacks sufficient merit to justify arbitration would constitute a breach of the duty of fair representation because a judge or jury later found the grievance meritorious, the union's incentive to settle such grievances short of arbitration would be seriously reduced. The dampening effect on the entire grievance procedure of this reduction of the union's freedom to settle claims in good faith would surely be substantial. Since the union's statutory duty of fair representation protects the individual employee from arbitrary abuses of the settlement device by providing him with recourse against both employer (in a 301 suit) and union, this severe limitation on the power to settle grievances is neither necessary nor desirable. Therefore, we conclude that the Supreme Court of Missouri erred in upholding the verdict in this case solely on the ground that the evidence supported Owens' claim that he had been wrongfully discharged.'
 
 
 23
 Appellants claim that the Firemen withdrew their grievance claim without any prior consideration of its merit. In an attempt to show the arbitrariness of the Brotherhood's actions, they point out that while Porch dismissed their claim as having no merit, the General Chairman of the Firemen's local had indicated some months before, in discussing whether the case should be withdrawn from the National Railroad Adjustment Board, that the case was of such merit that if it could not be submitted to a special board on the property it should not be left with a Vice President to dispose of with the Long Island, but rather left with the National Board and, in the event of an adverse decision, appealed to the federal courts.
 
 
 24
 The evidence shows, however, that Porch gave careful consideration to the merits of appellants' claim at a meeting with them before deciding against its validity. And it also appears that other union officials had previously given close attention to appellants' claim. Had the Brotherhood ignored the grievance claim or processed it in a perfunctory manner, it might well be held to be guilty of a breach of its duty. See Vaca v. Sipes, supra, 386 U.S. at 194, 87 S.Ct. 903; O'Mara v. Erie Lackawanna R.R. Co., 407 F.2d 674, at 678 (2d Cir. 1969), cert. granted sub nom. (Czosek v. O'Mara, 396 U.S. 814, 90 S.Ct. 80, 24 L.Ed.2d 66 (Oct. 14, 1969). Here, as in Vaca, however, the local union officials diligently pursued appellants' grievance until it was determined by Porch, an experienced negotiator from the International, to be without merit. The fact that the Brotherhood changed its mind as to the claim's validity, without more, avails nothing. 'Just as a union must be free to sift out wholly frivolous grievances which would only clog the grievance process, so it must be free to take a position on the not to frivolous disputes.' Humphrey v. Moore, 275 U.S. 335, 349, 84 S.Ct. 363, 372, 11 L.Ed.2d 370 (1964). And as the Court noted in Vaca, supra, 386 U.S. at 194, 87 S.Ct. at 919, 'There was no evidence that any Union officer was personally hostile to (the employee) or that the Union acted at any time other than in good faith.' The trial judge below found that the Firemen 'did what they could to assist the (appellants) in a favorable resolution of their claim,' that 'rather substantial attention was paid to the (appellants') rights,' and that 'There is not the slightest reason to believe that there was any animus or distaste for the (appellants).' These findings are amply supported by the record and should not be disturbed on appeal. See Thompson v. Brotherhood of Sleeping Car Porters, supra, 316 F.2d at 202.
 
 
 25
 As appellants' claim was withdrawn in return for a wage increase for all the firemen, the issue of fair representation may also be approached by inquiring whether appellants were subjected to unlawful and invidious discrimination in favor of others.
 
 
 26
 An agreement which favors a large group of employees over several individual employees is not necessarily prohibited as hostile and discriminatory. In Ford Motor Co. v. Huffman, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953), the Supreme Court said:
 
 
 27
 'Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit is represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.'
 
 
 28
 And in Cunningham v. Erie R.R. Co., supra, 266 F.2d at 417, we said:
 
 
 29
 'As Justice Stone suggested in Steele, 323 U.S. at page 203, 65 S.Ct. 226, it is not violative of federal law that the union not satisfy all employees or that it improperly balance the rights and obligations of the various groups it represents. Something akin to factual malice is necessary.'
 
 
 30
 Also see Thompson v. Brotherhood of Sleeping Car Porters, supra 316 F.2d at 200; Balowski v. International Union, supra, 372 F.2d at 833-835. A bargain which favors one group of employees over another, then, is not unlawful if it appears reasonable and if it is made in good faith.
 
 
 31
 Applying these principles to the facts of this case, we cannot find that the trial judge's conclusion that the Union acted at all times 'in good faith and in the exercise of reasonable judgment' was clearly erroneous. There is no indication in the record of any animosity against appellants on political or other grounds. Compare Ferro v. Railway Express Agency, Inc., supra. Nor does it appear that the Firemen decided to drop the claim of appellants (who were apparently by this time members of the Engineers) out of 'sheer favoritism' for the firemen. Although Porch's conclusion that appellants' claim was without merit may have been based on personal experience which may or may not have been an accurate indicator of the probabilities that such claims could be prosecuted successfully, no evidence was introduced which would lead one to infer that his conclusion in this regard was motivated solely by his desire to secure greater wage benefits for all the firemen. Porch's determination to drop a claim which he regarded as unmeritorious in order to ease the way for higher wages appears reasonable, and in the absence of any evidence that this decision was made in bad faith we believe that the trial judge was warranted in finding that appellants were not subjected to arbitrary discrimination by their union. To hold otherwise on this record would prevent a union from ever striking a bargain which benefits some of its members over others, a situation clearly at odds with federal labor policy as enunciated in such cases as steele and Ford Motor Co.
 
 
 32
 Moreover it appears possible that appellants are not without a remedy for the alleged violation of their seniority rights. There is some confusion as to exactly what portion of appellants' grievance was withdrawn by the March 23, 1961 agreement. Although it is clear that the agreement withdrew any claim for lost pay,[10] according to the trial testimony of he officials of the Firemen, the claim for restoration of seniority status was not settled by that agreement and in fact still remains open. Although we do not believe it our function either to decide whether the March 23, 1961 agreement covered seniority status or to interpret the underlying collective bargaining contract provisions relating to seniority, we see no reason why the appellants may not still seek to have these issues submitted to a special adjustment board or to the National Railroad Adjustment Board, which are vested with the authority to interpret these contractual provisions. See Slocum v. Delaware, L. & W.R.R. Co., 339 U.S. 239, 243, 70 S.Ct. 577, 94 L.Ed. 795 (1950).
 
 
 33
 Finally we turn to a consideration of appellants' claim that the failure of the Firemen to notify them of the precise terms of the March 23, 1961 agreement prejudiced them in their rights and affirmatively showed the Union's lack of good faith. Under the terms of the collective bargaining agreement, appellants had sixty days from the date of the determination to withdraw their claim to appeal that decision to the National Railroad Adjustment Board. Appellants claim that their failure to do so was caused by their inability to learn of the terms of the agreement. However, appellants did attend a meeting of the Firemen's local at which the terms of the agreement were explained to the members and they were also informed that their claim had been withdrawn by a supervisory employee of the Long Island. Although they may not actually have known how much of their claim had been withdrawn, they must be held to have had sufficient knowledge and notice of a decision unfavorable to them in order to enable them to make timely appeal.
 
 
 34
 Furthermore, while we do not condone the Firemen's failure to inform appellants individually of the specific terms of the agreement, we do not find, as appellants contend, that this evidences bad faith in withdrawing the claim. We believe the Firemen was warranted in assuming that the appellants had received adequate notice of the disposition of their claim. While the Firemen may have been lax in not giving appellants more specific information, its actions do not rise to the level of bad faith.
 
 
 35
 As to the repeated assertions that the claim of appellants was still pending, the officials of the Firemen have insisted that these assurances had reference only to the seniority status claim. These statements undoubtedly confused appellants.[11] The trial judge, however, chose to credit the testimony of these officials, and we cannot say he was unwarranted in finding that the officials of the Firemen did not intend by these statements to prevent appellants from exercising their rights.
 
 
 36
 We conclude that the record supports a finding that the Firemen acted at all times without arbitrary, discriminatory or bad faith intent in withdrawing appellants' claims. A holding that the Firemen did not breach its duty of fair representation is also dispositive of the claim against the Long Island. Accordingly we affirm the decision of the district court.
 
 
 
 [1]
 Simberlund is now deceased. This appeal is brought by the executrix of his estate
 
 
 [2]
 Firemen senior to appellants who were currently serving in the military were protected by giving them positions on the engineers' seniority roster just ahead of appellants, conditional upon their passing the qualifying examinations within a year after their return
 
 
 [3]
 Appellants urge us to hold that the protest of Engineers was not timely. Article 10(d) of the Chicago Joint Agreement provided that protest to seniority dates had to be made within 60 days after their listing in the roster. This provision was incorporated into the collective bargaining agreement in effect between the Firemen and the Long Island and had been written across the Bottom of the roster on which appellants' revised seniority dates first appeared. The district court found, however, that the Engineers had long ago repudiated this provision of the Chicago Joint Agreement and was not bound by it. Thus the failure of the Engineers to object to the seniority roster listings within 60 days did not constitute a waiver of the right to do so at a later time
 
 
 [4]
 It was stipulated at trial that the facts applicable to Storch, who testified were also applicable to Simberlund and Schenck. It was established by the testimony at trial that Storch was present at this meeting
 
 
 [5]
 Storch finally secured a copy of the March 1961 agreement from an official of the Engineers sometime in early 1962
 
 
 [6]
 See 45 U.S.C. 153 Second (Supp. IV 1965-68)
 
 
 [7]
 There is also a cross-appeal by the individual defendants from the order of the district court making the Firemen a party to the action. In view of our disposition of this case, we do not find it necessary to decide whether the trial judge abused his discretion in this regard
 
 
 [8]
 To state a claim for breach of the duty of fair representation justiciable in the federal courts, it must be alleged that the union acted in bad faith. Compare Slagley v. Illinois Central R.R. Co., 397 F.2d 546, 552 (7th Cir. 1968) and Gainey v. Brotherhood of Railway & Steamship Clerks, 313 F.2d 318, 323-324 (3d Cir. 1963) where complaints failing to allege bad faith were dismissed as insufficient
 
 
 [9]
 The nature of any relief given against the railroad would depend upon the nature and extent of its proven complicity in the alleged unlawful discrimination. See Carroll v. Brotherhood of Railroad Trainmen, 417 F.2d 1025 (1st Cir. Oct. 29, 1969)
 
 
 [10]
 The precise statement of the claim agreed to be withdrawn, as it appears in the March 23, 1961 agreement was as follows:
 'Claim of W. H. Simberlund, R. Storch, J. K. Schenck, for the difference in earnings made by R. J. Brown with a minimum of a day at engineers rate for each day that R. J. Brown was used as an engineman while the claimants were used as firemen, based on the fact that the claimants were and are senior to H. J. Brown, W. H. De Hart and several other Firemen who were and are being used as enginemen at the present time. This claim is made beginning March 8th, 1950, and succeeding day.'
 
 
 [11]
 However, since the appellants were possessed of sufficient information to make timely appeal from the withdrawal of the claim for back pay and since the issue of seniority is apparently still open, they have suffered no real prejudice as a result of this confusion