Michael MAVIS, James Desautel, Gerald Costello, Dennis Dingman, Appellants,

v.

The BROTHERHOOD OF RAILWAY, AIRLINE AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES, and Burlington Northern, Inc., Appellees.

No. 78–1190.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1978.

Decided Oct. 30, 1978.

John P. Clifford (argued), and Gerald M. Singer of Meshbesher, Singer & Spence, Minneapolis, Minn., on brief, for appellants.

James L. Highsaw Jr. (on brief) of Highsaw, Mahoney & Friedman, Washington, D. C., argued, for appellee, Brotherhood of Railway and Airline Clerks; John O'B. Clarke, Jr., Washington, D. C., Reed K. MacKenzie, Minneapolis, Minn., William J. Donlon, Gen. Counsel, Rosemont, Ill., on brief.

Barry McGrath of Burlington Northern, Inc., St. Paul, Minn., for appellee, Burlington Northern.

Before ROSS, Circuit Judge, MARKEY, Chief Judge,* and HENLEY, Circuit Judge.

HENLEY, Circuit Judge.

This is an action brought by four railroad telegraphers employed by Burlington Northern, Inc.[1] in the United States District Court for the District of Minnesota (Senior District Judge Earl R. Larson) against their employer and against the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees, AFL–CIO, which is the collective bargaining agent for railroad telegraphers and railway clerks employed by Burlington Northern. The suit was commenced in May, 1977 and was decided by the district court in January, 1978. The district court granted summary judgment in favor of the labor union that has been mentioned, hereinafter referred to at times as BRAC, and dismissed the complaint against the Railroad for lack of subject matter jurisdiction. The views of the district judge are expressed in a full but unpublished opinion which is part of the record before us.

When final judgment was rendered, the plaintiffs filed a timely notice of appeal.

During the period with which we are concerned, which goes back to 1967, railroad telegraphers and railroad clerks were recognized as separate classifications of employees in the railroad industry, and prior to 1967 were represented by different unions. In 1969 the two unions merged with BRAC being the surviving union. However, due to circumstances that will be mentioned the Railroad had one contract that covered the telegraphers and another that covered the clerks. In some respects the telegraphers' contract was more favorable to them than the clerks' contract was to the clerks; but in other respects the reverse was true.

In 1971 and 1972 and sporadically thereafter negotiations were conducted between the Railroad and BRAC looking toward a consolidation of the duties of telegraphers and clerks. Such a consolidation would have resulted in one collective bargaining agreement covering both the telegraphers and the clerks. However, those negotiations broke down after the Railroad lost interest in them. By 1977 at least some of the telegraphers were convinced that BRAC was discriminating against them and in favor of the clerks, and that the Railroad and BRAC were illegally acting in collusion with each other. At this point plaintiffs filed this suit as an attempted class action for the benefit of all of the telegraphers employed by the Railroad.

Plaintiffs allege that BRAC, acting in concert with the Railroad, has breached the duty of fair representation that it owed to the telegraphers, and that the telegraphers are entitled to both injunctive and pecuniary relief.

The complaint is quite long and detailed and is in two counts. Subject matter jurisdiction is predicated on the claim that the

---

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. Burlington Northern, Inc. is a rail carrier that was formed as the result of a merger of a number of midwestern and northern railroads.

Effecting the merger consumed several years; it was finally approved by the Supreme Court and went into effect in 1970. *United States v. Interstate Commerce Comm.*, 396 U.S. 491, 90 S.Ct. 708, 24 L.Ed.2d 700 (1970). (Northern Lines Merger Cases).

suit arises under an Act of Congress Regulating Interstate Commerce, 28 U.S.C. § 1337, and reference is made to §§ 1 and 2 of the Railway Labor Act of 1926, as amended, 45 U.S.C. §§ 151 and 152.

In the first count plaintiffs alleged that BRAC had breached its duty of fair representation of all of its members and was discriminating against the telegraphers and in favor of the clerks. In the second count it was charged that BRAC and the Railroad had unlawfully conspired together not to agree on a consolidation of the telegraphers and the clerks which consolidation would have involved the execution of a new collective bargaining agreement covering both classifications of employees.

The prayer of the complaint was that the district court order consolidation of the two classifications of employees in line with an agreement entered into between BRAC and the Railroad in 1971. Plaintiffs also prayed for compensatory and punitive damages totalling $50,000,000.00, for costs, expenses of litigation, an attorney's fee, and any other appropriate relief.

In due course plaintiffs moved for an order permitting them to prosecute the suit as a class action and protecting them from retaliation at the hands of either the Railroad or BRAC.

The defendants answered and denied liability. Later they filed separate motions to dismiss the complaint, or, alternatively, for summary judgment pursuant to Fed.R. Civ.P. 56. Plaintiffs resisted the motions.

The district judge first considered the contention of BRAC that the controversy between the parties was within the primary jurisdiction of an adjustment board established under the provisions of Section 3 of the Railway Labor Act, 45 U.S.C. § 153. The judge was of the opinion that where a charge is made that a labor organization representing railroad employees has breached its duty of "fair representation," the doctrine of "primary jurisdiction" is not applicable, and that the federal courts have subject matter jurisdiction with respect to the action at least as long as the union involved remains in the case as a defendant. *See Anderson v. United Transp. Union*, 557 F.2d 165, 169–70 (8th Cir. 1977); *Augspurger v. Bhd. of Locomotive Engineers*, 510 F.2d 853, 857–58 (8th Cir. 1975). *See also* the formidable list of cases cited in *Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 850–51 (2d Cir. 1961), which includes the leading case of *Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), wherein it was held that a railway labor union must refrain from discriminating against employees represented by the union, and that discriminatees had an available judicial remedy.[2]

Judge Larson next considered the union's claim that the complaint should be dismissed because the plaintiffs had made no effort to invoke or exhaust internal union procedures available to plaintiffs. The district judge thought that there was merit to this contention, and that he would be justified in dismissing the complaint as to BRAC on that basis. However, the judge preferred not to take that course but to consider the union's motion for summary judgment on the merits.

On the merits, Judge Larson considered that there was simply no evidence to indicate that the union had discriminated against the telegraphers either acting alone or acting in concert with the Railroad, and he concluded that the motion in question should be granted.

With the union out of the case the district court thought that it had lost jurisdiction of the claim against the Railroad, and as to the Railroad the case was dismissed for lack of jurisdiction.

Final judgment against the plaintiffs and in favor of both defendants having been entered, the plaintiffs filed timely notice of appeal.[3]

---

2. This court commented on *Steele* in *Augspurger v. Bhd. of Locomotive Engineers, supra*, 510 F.2d at 857. Judge Heaney's continuing discussion of the over-all problem appears at 858–60.

3. The disposition that the district court made of the entire case rendered it unnecessary for the district judge to pass on plaintiffs' motion for leave to prosecute the case as a class action and for a protective order.

We address ourselves, first, to the question of the correctness of the action of the district court in granting summary judgment in favor of BRAC.

The standards to be applied by a district court and by this court in evaluating such a motion have been often stated and are quite familiar. *See, e. g., Ledwith v. Douglas,* 568 F.2d 117 (8th Cir. 1978); *Weber v. Towner Cty.,* 565 F.2d 1001 (8th Cir. 1977); *Percival v. General Motors Corp.,* 539 F.2d 1126 (8th Cir. 1976). It is not to be supposed that Judge Larson was ignorant of those standards when he decided this case.

The historical or background facts in the case are not in substantial dispute. We will state them as briefly as possible and we adopt in large measure the statement of facts that appears in the well written opinion of the district court.

As above noted,[4] Burlington Northern, Inc. resulted from the merger of a number of railroads and the merger involved several years of negotiation and litigation. Before the merger could be approved by the Interstate Commerce Commission, it was necessary for the carriers involved to work out protective agreements designed to protect rights and interests of employees that might be affected adversely by the proposed merger in the absence of such agreements. 49 U.S.C. § 5(2)(f). Those protective agreements called for by the proposed merger with which we are concerned were executed and approved by the Commission in 1967. *Great Northern Pacific & Burlington Lines, Inc.—Merger, etc.—Great Northern Rwy. Co.,* 331 I.C.C. 228 (1967), aff'd sub nom. *United States v. United States,* 296 F.Supp. 853 (D.D.C.1969), aff'd sub nom. *United States v. Interstate Commerce Comm.,* 396 U.S. 491, 90 S.Ct. 708, 24 L.Ed.2d 700 (1970).

When the protective agreements were worked out in 1967, the railroad clerks were represented by BRAC whereas the telegraphers were represented by the Telecommunication Workers Union (TWU). However, as has been indicated, in 1969 TWU was merged into BRAC which thereafter has represented both of the classes of employees here involved. But, again, as has been seen, the collective bargaining agreements in force with respect to the clerks and with respect to the telegraphers had certain differentials that have persisted until this day and that have brought about this lawsuit.

Briefly stated, the differentials were and are that under the 1967 protective agreements the telegraphers were somewhat better off than the clerks from the standpoint of pay; but the clerks were somewhat better off than the telegraphers as far as geographical locations of work assignments were concerned. Specifically, a railroad clerk could not be assigned to a job located more than thirty miles from his existing or assigned work location. Obviously, this "home zone" provision was and is important to railroad employees who are beginning to age or who are married men with children in school.[5]

In 1970 the protective agreements were open to renegotiation and revision. As of that time, BRAC was representing both the telegraphers and the clerks. Negotiations took place; BRAC and the Railroad could not agree on terms, and the dispute was referred to an adjustment board under the provisions of the Railway Labor Act, *supra.* That Board recommended wage increases, and it also recommended that the duties of clerks and telegraphers be consolidated on terms to be agreed upon by the Railroad and the union. In February, 1971 the Railroad and BRAC executed a "National Agreement" which provided for wage in-

---

4. See n.1, *supra.*

5. We observe at this point that the complaint alleges that the plaintiff, Mavis, as of 1977 had worked as a telegrapher for Burlington Northern and its predecessors for 23 years; that plaintiff Desautel had been similarly employed for almost 30 years; that plaintiff Costello had been so employed for 14 years; and that plaintiff Dingman had been a telegrapher for Burlington Northern and its predecessors for 10 years and was a "member of the extra board."

creases and which also provided in Article VIII that the parties might agree to consolidate the duties of the telegraphers and clerks. The right to initiate negotiations to that end was vested in the Railroad.

In April, 1971 the Railroad notified BRAC that implementation of Article VIII was desired and called on the union to present a proposal. The union presented a proposal which was unacceptable to the Railroad which contended that BRAC was trying to preserve the best provisions of both the telegraphers' and the clerks' contracts for the benefit of union members. The Railroad refused to agree to that proposal and insisted that either the telegraphers' contract or the clerks' contract be adopted in toto and to the exclusion of the other.

Between September, 1971 and December, 1972 various moves were made by the respective parties and various proceedings were had which led nowhere. At that stage the Railroad withdrew its demand or request for implementation of Article VIII of the 1971 agreement.

From December, 1972 to some point in 1973 BRAC tried to get the Railroad to resume implementation negotiations or procedures. However, the district court found that the union eventually decided that the Railroad was not interested any longer in implementation, and that "trying to force implementation on the adamantly opposed carrier would require a considerable expenditure of effort on arbitration proceedings and that in view of the legal and financial difficulties involved the matter should be dropped. BRAC continues to attempt through negotiations to alleviate some of the telegraphers' complaints by modifying the separate working agreement covering the telegraphers."

The district court then stated:

These basically undisputed facts hardly support an inference that BRAC acted in bad faith; its efforts to achieve a solution to the problem with BN, over a period of more than two years, were vigorous and even-handed. The decision to forego further efforts was based upon a pragmatic assessment of the likelihood of success. Moreover, that decision did not actively confer a benefit on the BRAC clerks; it left all employees in the status quo under their separate working agreements and the union cannot be said to have 'sold out' one group to gain a benefit for another.

The district court next referred to affidavits submitted by certain telegraphers which established that they are dissatisfied with their situation and with BRAC's decision not to press further for implementation of the 1971 agreement; that there are fewer telegraphers than clerks; that there is some friction between telegraphers and clerks; and some friction between the telegraphers and the union.

Judge Larson felt, however, that those showings fell short of stating facts from which violations of the union's duties to the telegraphers could reasonably be inferred. The judge stated that the only inference warranted by the facts shown by the telegraphers was that they did not like the decision at which BRAC had arrived; in other words, that the telegraphers were disgruntled at the union's decision not to press for implementation of the 1971 agreement, regardless of the efforts made in the past and the unlikelihood of success of future efforts.

In concluding his discussion of this phase of the case the district judge said:

It is well settled that such a showing is not enough. That a union's actions or inactions displease a minority or even affirmatively disadvantage them does not constitute unfair representation, see, e. g., Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953); Simberlund v. Long Island R.R. Co., 421 F.2d 1219 (2d Cir. 1970); Cunningham v. Erie R.R. Co., 266 F.2d 411 (2d Cir. 1959); see also Balowski v. International Union, 372 F.2d 829 (6th Cir. 1967). The Supreme Court has stated that unions must have wide discretion to take such action as they believe is in the best interests of the parties represented:

The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness

must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.

*Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953).

The Eighth Circuit has also stressed the importance of preserving such union discretion by defining the unfair representation doctrine narrowly. Quoting the Supreme Court in *Motor Coach Employees v. Lockridge,* 403 U.S. 274, 301, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971), the court stated:

> [T]he . . . distinction . . . between honest, mistaken conduct, on the one hand, and deliberate and severely hostile and irrational treatment, on the other, needs strictly to be maintained.

*Augspurger v. Bhd. of Locomotive Engineers, supra,* 510 F.2d at 858.

In sum, the court is convinced that plaintiffs cannot show the severe and deliberate hostility necessary to establish an unfair representation claim:

> 'Nowhere in the material outside the complaint . . . do facts or allegations appear which show or tend to show any improper motive or purposeful discrimination. The entire record before this court . . . does nothing more than establish that there is a difference of opinion . . . between the parties.'

*Balowski v. International Union, supra,* 372 F.2d at 829 [quoting *Hardcastle v. Western Greyhound Lines,* 303 F.2d 182 (9th Cir. 1962)].

Defendant BRAC's motion for summary judgment shall be granted.

In taking up the claim against the Railroad the district court first observed that the disposition of the claim asserted against the union was of assistance in disposing of the claim against the carrier. Judge Larson then proceeded to discuss the claim against the Railroad. He said:

Count II of the complaint is a breach of contract claim against BN and clearly falls within the primary jurisdiction of the Railroad Adjustment Board. *See, e. g., Ferro v. Rwy. Express Agency, supra,* 296 F.2d at 851. Jurisdiction over the railroad on such a claim would be dependent on the court's taking jurisdiction over the union and on an analysis of whether the railroad should be a party in the suit in order to afford complete relief in one forum. *See, e. g., Cunningham v. Erie R.R. Co., supra,* 266 F.2d at 416. *See generally Carroll v. Bhd. of R.R. Trainmen,* 417 F.2d 1025 (1st Cir. 1969), *cert. denied,* 397 U.S. 1039 [90 S.Ct. 1359, 25 L.Ed.2d 650] (1970). Such considerations are obviously irrelevant here since BRAC's Motion has been granted. [Footnote omitted.]

It should also be noted that apart from the breach of contract claim, plaintiffs attempted to link BN directly to the unfair representation claim, alleging that BN conspired with BRAC or triggered the union's bad faith conduct. *See generally Vaca v. Sipes,* 386 U.S. 171 [87 S.Ct. 903, 17 L.Ed.2d 842] (1967); *Glover v. St. Louis-San Francisco Rwy. Co.,* [393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969)]; *Czosek v. O'Mara,* 397 U.S. 25 [90 S.Ct. 770, 25 L.Ed.2d 21] (1970). Even if plaintiffs had shown BRAC was in bad faith, however, joinder of the railroad on this ground would be problematic. Plaintiffs are essentially alleging that BN conspired with BRAC to "fail to agree," a charge that strains credulity in light of the undisputed facts listed above. It would be a strange twist on the unfair representation doctrine to hold that where an employer tries to drive a hard bargain and refuses to accede to union demands, it has conspired with the union or acquiesced in bad faith representation.

The complaint against the railroad must be dismissed.

■ We find ourselves in agreement with the conclusions reached by the district court on both phases of the case, and there is nothing of substance that we can add to what Judge Larson had to say about the

issues with which he was confronted. Thus, largely on the opinion of the district court, we affirm the actions of the district court in granting summary judgment in favor of the union and in dismissing the complaint as against the Railroad when it was determined that the union would not remain in the case as a defendant.

Affirmed.